COMMERCIAL BANK OF MILWAUKEE, Appellant, vs. FIREMEN'S INSURANCE COMPANY OF DAYTON, OHIO, Respondent.

*February 28 — March 16, 1894.*

*Insurance against fire: Adjustment of loss: Fraud: Alteration of books, etc.: Injury to insurer: Evidence.*

1. Although the books of the insured, as submitted to the adjusters, had been altered with bad motive after the loss, and an inventory made before the loss was suppressed, those facts do not constitute a defense to an action to recover the amount agreed upon on the adjustment, unless the defendant was injured thereby.
2. If they wrought no injury to the insurer, such alteration of the books is not a fraud, nor is the suppression of the inventory the concealment of a " material fact," within the meaning of a provision avoiding the policy in case of fraud by the insured relating to the insurance or in case he concealed any material facts.
3. Testimony of the adjusters that they would not have made the adjustment if they had known of the alteration of the books, was not admissible.
4. Testimony of the manager of the assured, who made the alterations, as to his intent in so doing, was admissible.

APPEAL from the Superior Court of *Milwaukee* County.

The defendant is a fire insurance company. On January 26, 1891, it issued a policy of insurance to the Island Sash & Door Company, on its factory, and stock in its dry kilns and warehouse, and lumber in the yard, for the amount of $1,000. On the 7th day of June, 1891, a loss occurred. On the 18th day of June, 1891, the loss was adjusted at

$691.88, which sum the defendant promised to pay. After-wards, the Island Sash & Door Company sold the claim to the plaintiff. The action is on the adjustment to recover the sum agreed upon.

The defense is that the Island Sash & Door Company had procured such adjustment of loss by fraud practiced upon the adjusters; that such adjustment had been based upon an inspection of the books of the insured, which had been altered and falsified for the purpose of deceiving the adjusters, and which did deceive them as to the amount of the loss; and that the insured suppressed an inventory of its stock for the purpose of defrauding the defendant.

It was conceded on the trial that an account, which is called by the witness the "manufacturing account," had been changed after the fire, by erasure and overwriting, so as to be reduced by the sum of $13,000, and the lumber account had been increased by the same sum. The in-sured, while admitting the alteration, claimed that it was made for the purpose of showing more truly the amount of property on hand at the time of the loss, and that that was its effect. It was not decided, or submitted to the jury, whether the effect of the alteration was to approxi-mate it more nearly to the true condition of the business. There was evidence which tended to show that that was its effect. It was also controverted upon the trial whether the insured suppressed an inventory of the manufactured stock taken in January, 1891. This inventory was pro-duced on the trial. It is not claimed that it showed a dif-ferent state of facts from those apparent by the books used at the adjustment.

There was a special verdict as follows: "1. Had the manufacturing account upon the books of account of the Island Sash & Door Company been reduced $13,000 by changing two entries upon the debit side of such account, before it was submitted to the adjusters? *Answer* (by the

court). Yes. 2. Was the lumber account upon the books decreased $13,000 upon the credit side before it was submitted to the adjusters? *A.* (by the court). Yes. 3. Did the adjusters, in making up the account, rely upon the correctness of the manufacturing account as submitted to them? *A.* Yes. 4. Did the adjusters, in making up the adjustment, rely upon the correctness of the lumber account as submitted to them? *A.* Yes. 5. Were the adjusters of the defendant ignorant of such alterations at the time of making such adjustment? *A.* Yes. 6. Did the Island Sash & Door Company make the alterations in the account books for the purpose of deceiving the adjusters and inducing them to make such adjustment? *A.* Yes. 7. Was the inventory book containing the inventory of January 1, 1891, withheld or concealed from the defendant at the time and prior to the settlement in question by the Island Sash & Door Company or any of its officers or agents? *A.* Yes. 8. If you answer the foregoing question in the affirmative, were the adjusters induced by the concealment of such inventory to make such adjustment? *A.* Yes. 9. Do you find for the plaintiff or defendant? *A.* Defendant."

There was judgment for the defendant on the special verdict, from which the plaintiff appeals.

For the appellant there were briefs by *Turner & Timlin* and *W. H. Timlin,* and oral argument by *Mr. Timlin.* They argued, among other things, that there was a mistrial, because it was considered a sufficient defense that false representations were made with evil intent, without regard to the materiality of such representations, or without regard to whether the defendant suffered any damage by reason of such representations. No defense to an action upon a settlement or account stated is made out by mere proof that the defendant was induced to acquiesce by false representations, not accompanied by any proof that the account as stated, or settlement as made, is in any way in-

Commercial Bank of Milwaukee vs. Firemen's Ins. Co. of Dayton, Ohio.

correct, or is any greater than the defendant ought to pay. *Ableman v. Roth,* 12 Wis. 81; *Castleman v. Griffin,* 13 id. 535; *Barber v. Kilbourn,* 16 id. 485; *Fuller v. Green,* 64 id. 159; *Matteson v. Ellsworth,* 33 id. 488; *Gorden v. Robertson,* 48 id. 493; *Hutchins v. Hutchins,* 7 Hill, 104; *Lamb v. Stone,* 11 Pick. 527; *Wellington v. Small,* 3 Cush. 145; *Bradley v. Fuller,* 118 Mass. 239; *Parker v. Jewett,* 52 Minn. 514; 1 Story Eq. Jur. sec. 203; 2 Pom. Eq. Jur. sec. 893; *Foster v. Taggart,* 54 Wis. 393; *Potter v. Taggart,* 59 id. 1; *Bammessel v. Brewers' F. Ins. Co.* 43 id. 463; *Miller v. Chippewa Co.* 58 id. 637; *Spaulding v. Wood,* 8 id. 195; *Story v. Conger,* 36 N. Y. 673, 676; *Bumstead v. Dividend Mut. Ins. Co.* 12 id. 81; *Springfield F. & M. Ins. Co. v. Winn,* 27 Neb. 649; *Seyk v. Miller's Nat. Ins. Co.* 74 Wis. 70.

For the respondent there was a brief by *Miller, Noyes & Miller,* and oral argument by *Geo. H. Wahl.* To the point that the question of *materiality* did not depend upon the ultimate extent of the liability of the defendant, but upon the question of evidence or information to the adjusters, which under the contract they had a right to expect and receive from the assured, they cited *Claflin v. Comm. Ins. Co.* 110 U. S. 81–95; *Faugier v. Hallett,* 2 Johns. Cas. 233–4; *Stache v. St. Paul F. & M. Ins. Co.* 49 Wis. 89; *Ableman v. Roth,* 12 id. 81; 1 Story Eq. Jur. sec. 187; *Potter v. Taggart,* 59 Wis. 1, 9.

NEWMAN, J. The litigated question was whether, by the alteration of the books of the Island Sash & Door Company, the defendant was defrauded. The alteration was not denied, nor that the books as altered were presented to the adjusters as representing with substantial correctness the true condition of the business of the insured at the time of the loss. The case was tried on the part of the defendant, and submitted to the jury by the court, upon the theory that the alteration of the books, if from a bad motive, was

a complete defense against the action on the settlement, without regard to the question whether the books as altered did really misrepresent the condition of the business of the insured. The integrity or depravity of the motive which led to the making of the alterations was made the test, rather than the effects of the alterations upon the rights of the defendant. Yet little or no evidence was given bearing upon the question of motive, except the making of the alterations themselves. No evidence was given to show that the books as altered did in fact misrepresent the condition of the business, while on the other hand there was considerable evidence tending to show that the books as altered did show with substantial correctness the actual condition of the business, and that the alteration was designed, and had the effect, to make the books more nearly to represent the true state of the business than they did before. Yet this seems to have been an important question in the case,— perhaps the important question in the case; for, if the alteration had this effect upon the books, it is difficult to see how it could have had the effect to deceive the adjusters, whatever may have been the intention of the parties in making it. Besides, if that was, indeed, its effect upon the books, that should have been almost or quite decisive of the motive which induced the alteration, and it must have been quite decisive of the question whether the defendant was defrauded by it. But this question did not bear the brunt of the controversy. It was not submitted formally in the special verdict, nor in any way except as involved in the more comprehensive question, Was the defendant defrauded? This larger question was tried and submitted to the jury on the theory that, if the motive for the alteration was bad, it was unimportant whether the defendant was damaged by reliance upon the altered books.

The court refused to submit, in the special verdict, this question asked by the plaintiff: "Was the liability of the

defendant on the said insurance policy affected, or in any amount increased, by said alteration?" nor did it submit any equivalent question. It also refused to give these instructions asked by the plaintiff: "If you find from the evidence that the defendant was in no way injured by the alterations or erasures in the books, nor by the absence of the inventory of January 1, 1891, and the amount agreed upon at the settlement was the correct and the true amount due from the defendant, then the facts become immaterial or not fraudulent." And this: "Fraud cannot be made available to any party to set aside or defeat a settlement or account stated, unless it causes some injury to the party complaining of such fraud." And the court gave no equivalent instructions.

The law does not undertake to furnish remedies for wrongs which are so impalpable or imaginary as not to cause damage. The law does not regard or treat as a fraud a deception so intangible as not to cause damage. To amount to a legal fraud, it must both deceive and damage. *McDonald v. Daniels*, 58 Wis. 428. This was a vital question in the case, and should have been submitted, and the instructions asked should have been given.

So in regard to the suppression of the inventory. Although this inventory was produced at the trial, it was not attempted to show that it represented any different condition of stock from that assumed as the basis of the adjustment; so its suppression could neither have deceived nor damaged the defendant.

And it does not appear that the defendant had a defense against an action on the policy, which it has waived or lost by the settlement. There was a provision in the policy of insurance that the "entire policy shall be void if the assured has concealed or misrepresented, in writing or otherwise, any material facts or circumstances concerning the insurance or the subject thereof, . . . or in any case of

fraud or false swearing by the insured relating to the insurance or the subject thereof, whether before or after loss." Provisions in the policy which work a forfeiture are to be construed as strongly against the insurer, and as favorably to the insured, as its terms will reasonably permit. *Wakefield v. Orient Ins. Co.* 50 Wis. 532; *Kircher v. Milwaukee M. M. Ins. Co.* 74 Wis. 470. Unless the concealing of the inventory worked an injury to the defendant, it could not have been the concealment of a material fact; and if the alteration of the books wrought no damage, it was not a fraud within the meaning of this provision of the policy.

The adjusters were permitted, against plaintiff's objection, to state that they would not have made the adjustment if they had known of the alteration of the books. It is difficult to see how this is more than their opinion of what they would have done under altered circumstances. One cannot very surely predict what he will do in any hypothetical situation. If the alteration of the books had come to the attention of the adjusters at the time of adjustment, and they had investigated,— as they did not upon the trial,— and had found, as the plaintiff claims, that the books were really made more truthful, as related to the loss, very likely they would have made the same adjustment. This was not an improbable result of investigation, from anything that appeared upon this trial. The jury could have answered this question with as much knowledge and certainty as the adjusters themselves. It should not have been permitted to be answered, under objection.

Mr. Conrad Bohn, the business manager of the insured,— the person who caused the alteration of the books to be made,— was asked, "Did you have any intention of deceiving or defrauding this defendant by so doing?" (meaning altering of the books). Upon objection the answer was excluded as incompetent, and not on account of the form of

the question.    That the testimony was competent and should have been received is well settled.    *Anderson v. Wehe,* 62 Wis. 401, and cases cited.

The real questions upon which the rights of the parties depend were neither tried nor submitted to the jury.

*By the Court.*— The judgment of the superior court is reversed, and the cause remanded for a new trial.