Lenz vs. Whitcomb and another.

LENZ, Respondent, vs. WHITCOMB and another, Receivers, Appellants.

*May 3 — May 21, 1897.*

*Railroads: Injury at highway crossing: Failure to look: Contributory negligence: Court and jury.*

In an action to recover for personal injuries occasioned by collision with a locomotive at a highway crossing, it appeared that plaintiff and a companion, driving a gentle horse used to cars, approached the track at an angle of thirty degrees; that they stopped twice to look and listen, the last time when they were about 200 feet distant, and then drove on at a moderate pace without again looking; that by turning partly around, at any point within 500 feet of the crossing, they had an unobstructed view of the track in the direction from which the train came for a distance of nine-tenths of a mile; and that plaintiff was familiar with the locality and knew that trains were liable to pass at any time. *Held,* that he was guilty of contributory negligence, as matter of law, in failing to look and listen again before crossing.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

This action was brought against the defendants, as receivers of the Wisconsin Central Railroad Company, to recover for injuries to person and property, resulting from a collision with one of defendants' freight trains, at a road crossing a short distance outside of the corporate limits of the city of Oshkosh, about 6 o'clock in the afternoon of July 17, 1895. The negligence alleged was excessive speed and failure to give the statutory signals, which the plaintiff's evidence tended to establish. At the close of the plaintiff's case the defendants moved for a nonsuit, which was denied, and, at the close of the testimony, the defendants moved the court to direct a verdict in their favor. This was also denied. The jury found that the plaintiff was injured, in person and property, by reason of the defendants' negligence, and that the plaintiff was not guilty of negligence which contributed

Lenz vs. Whitcomb and another.

proximately to the injury. Plaintiff's damages were assessed at $200. Defendants moved to set aside the verdict and for a new trial, on the ground that the verdict was contrary to the law and the evidence, and for error in refusing to direct a verdict for the defendants. This motion was denied, and the plaintiff had judgment for $200 damages and costs, from which the defendants appealed.

The question presented was whether the court erred in refusing to direct a verdict for the defendants, and in denying the motion for a new trial, for the reason that the plaintiff was guilty of contributory negligence. The highway upon which the plaintiff was traveling, with a horse attached to a covered peddling wagon, was called Oregon street, and crosses the railroad track at an angle of about thirty degrees. The south right of way fence, which is thirty-two feet from the track, if projected, would intersect the highway about eighty-five feet from the crossing. A point on the highway 500 feet south of the crossing is 209 feet westerly at right angles from the track. At the time of the accident, the field occupying the angle between the track and the highway was planted to corn, and there were nine shade trees along the highway. The track approaching the highway was upon a grade or embankment at the crossing some two feet above the level of the road, and, at a culvert about 2,500 feet easterly, some twelve feet above the general field. The highway south of the railroad was substantially level for a long distance. A person standing at any point in the highway, within 500 feet of the crossing, could see a train on the track at any point within nine-tenths of a mile. The plaintiff testified he could, from such 500-foot point, see the track, the cattle run or culvert, and beyond it the next highway crossing, over 2,000 feet. At a 300-foot point about the same view was to be had. Except for the shade trees and the corn, there was no obstruction to vision at any point on the highway; and a man

five feet six inches in height, standing in the highway at the 500-foot point, could see the railroad track over the top of the corn in the field, if six or six and one-half feet tall. The photographs introduced by the defendants, taken within two days after the accident, show that there was no obstacle to an unobstructed view of the train upon the track, taken from any point on Oregon street, within 262 feet of the railroad crossing, and that the shade trees did not interfere. The fireman could see from the whistling post, 1,320 feet, the horse and wagon approaching the crossing across the corn field, and saw them until the collision.

On the day in question, plaintiff and a man named Chase were returning home from a trip in the country, riding in the direction of Oshkosh, on a covered wagon. The cover of the wagon did not extend forward of the seat, and the wagon did not rattle. At Chase's suggestion, they stopped 500 feet south of the track, looked and listened, proceeded then 200 or 300 feet, and, as a precaution, stopped again, and looked and listened. Chase looked to the north, and the plaintiff to the south, saw nothing, and proceeded at a trot to within twenty or thirty feet of the crossing, when plaintiff first heard or saw the train, and the collision followed. After stopping the last time, some 200 or 300 feet from the track, the horse trotted right along till the accident, and neither party looked or listened for the train during the interval. The horse had been raised in a pasture near the railroad, was quiet, would stop when the driver bade him, and there was no trouble driving it with the voice. The evidence was that trains were liable to be running at any time. The day was fine, and not windy, and the wagon was free from rattle. After stopping and listening at the 200-foot point, plaintiff kept all the time his eyes on the horse, and the horse trotted along. As he approached the crossing, the train caught him there, and threw him into the ditch. He said: "I see the train, which was right near

up to me. If I jump out, I would jump right on it. At that moment it catched the horse already, and that is all that I know." He was familiar with this railroad crossing,— had been in the habit of driving there twice a week for twelve years. He testified that he listened, but did not hear anything. Chase sat by his side, and they were talking to each other. After he left the 200-foot point, he did not look again. Chase testified that after they stopped the second time the horse trotted all the time until the collision; that the first he heard of the train was just as they struck the grade to cross the railroad track; he heard a rumbling noise, and saw the engine; that, after the 200-foot stop, there was no other stop for looking, or any other examination for a train from the east. The photographs taken within two days after the accident, and a map made to a scale and measurements, upon which surrounding objects and those between the highway and the track were located, were put in evidence.

For the appellants there was a brief by *Howard Morris* and *Thos. H. Gill*, and·oral argument by *Mr. Gill*.

*F. W. Houghton*, for the respondent.

PINNEY, J. For a distance of from 200 to 300 feet, as the plaintiff and his companion approached the track at an angle of thirty degrees, neither of them looked to see whether any train was approaching the crossing, and it is clear that there was no obstacle that in any material respect could have obstructed or obscured their view. The plaintiff was entirely familiar with the locality, crossed there twice, at least, every week, and knew that a train was liable to pass at almost any time. The horse was a gentle one, and accustomed to the presence of trains. By looking northerly, they could see in the direction of the city whither they were going. By turning partly around to the right, the view was unobstructed, so that a person at any point within the highway, within

500 feet of the crossing, could see a train on the track, in the direction from which it approached, for a distance of nine-tenths of a mile. They understood that a train was likely to come along, and they had stopped twice, and looked in both directions, and listened. When they started up the last time, within about 200 or 300 feet of the crossing, one of them testified that they proceeded at a moderate trot until struck by the train, and the other that the horse walked about 100 feet, and then proceeded at a moderate trot. Both say that they listened, and both agreed that they did not look for an approaching train. The rule is inflexible that a party approaching the track, intending to cross it, is bound to both look and listen, and a failure to do so is negligence, which disentitles him to recover if injured, in crossing, by the train. The failure of the defendants to give the proper signal was such negligence as would have made them liable in the action, in the absence of contributory negligence on the part of the plaintiff, but, if he was guilty of such negligence, the negligence of the defendants becomes immaterial. If the plaintiff could have prevented or avoided the accident by using his eyes in looking and his ears in hearing, then he was not entitled to recover. It is beyond question that had he used ordinary vigilance in looking, after passing the 200-foot point, he would have avoided injury. With his horse under control, he took the risk of proceeding without attempting to make further observation. *Bower v. C., M. & St. P. R. Co.* 61 Wis. 457; *Williams v. C., M. & St. P. R. Co.* 64 Wis. 1; *Seefeld v. C., M. & St. P. R. Co.* 70 Wis. 216; *Schmolze v. C., M. & St. P. R. Co.* 83 Wis. 659; *McKinney v. C. & N. W. R. Co.* 87 Wis. 282; *Nelson v. D., S. S. & A. R. Co.* 88 Wis. 392; *Groesbeck v. C., M. & St. P. R. Co.* 93 Wis. 505.

It was urged that the question of contributory negligence in this case was one of inference, and that, where the inferences to be drawn from the evidence are doubtful and uncertain, the question is one for the jury within the rule in

Lenz vs. Whitcomb and another.

*Seefeld v. C., M. & St. P. R. Co., supra;* but upon the facts about which there is no dispute, and against which there can be no fair inference, it is clear that the plaintiff was guilty of contributory negligence. The angle of approach of the highway and the railroad track was only about thirty degrees, and for a considerable distance they were quite near to each other, and at no point, for 500 feet, more than 200 feet apart. Knowing that a train was liable at almost any time to pass over the crossing, and that the passenger train was nearly due, if the view of the track was so obstructed that he could not see an approaching train in time to stop his horse before colliding with it, and if he was unable to hear an approaching train when the wagon was in motion, he should have stopped his wagon before arriving at the danger line, and taken proper observations and precautions to have avoided injury. Had he continued to exercise proper caution after he started up the last time, there is no reason to suppose but that he would have been able to have avoided injury; but he wholly omitted to do so. Although he had observed all reasonable caution until he was within 200 feet of the point of danger, there can be no fair inference of ordinary care, as against the plain and established facts of the case, which show that the plaintiff, by contributory negligence, is precluded from recovering. The circuit court should have set aside the verdict, and granted a new trial.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.