BEYER, Respondent, vs. St. Paul Fire & Marine Insur-
ANCE COMPANY, Appellant.

*October 19 — November 29, 1901.*

(1, 2) *Court and jury: Questions of fact.* (3–7) *Fire insurance: Proofs
of loss: False swearing: Ownership, quantity, and value of prop-
erty: Classification.*

1. If there is a conflict in the credible evidence upon a question of fact,
so that reasonable minds might differ as to the inference to be
drawn therefrom, the question is for the jury and the court should
not assume to answer it, either upon motion for nonsuit or direc-
tion of verdict, or by substituting another answer after the verdict
is returned.

2. But upon a motion to set aside the verdict and for a new trial the
court may consider whether there is such an overwhelming pre-
ponderance of evidence against the verdict that it ought not to
stand; and its decision on that point will not be disturbed on ap-
peal unless clearly wrong.

3. In order to render a standard policy of fire insurance void because of
"false swearing by the assured touching some matter relating to
the insurance or the subject thereof," the false swearing must have
been knowingly and wilfully done. It is not enough that it occurs
through mistake, carelessness, or inadvertence, or even in unrea-
sonable reliance on information derived from others.

4. Proofs of loss under a fire insurance policy were made on printed
forms furnished by the insurer for general use and contained no
declaration that the assured had personal knowledge as to the
facts stated therein. The form evidently contemplated declara-
tions by the assured as to the acts of others, and the policy only
required that the proofs should give the knowledge and belief of
the assured. *Held*, sufficient to warrant the assured in assuming
that the information called for might be given upon information
and belief if she had not knowledge.

5. Wilful fraud cannot, as matter of law, be attributed to an illiterate
farmer's wife because, in proofs of loss, she scheduled second-hand
goods with their full original cost, where the policy might fairly
be understood to demand this, by requiring schedules to be made
in which should be inserted "the cost of each article."

6. In an action on a policy of fire insurance the evidence (discussed in
the opinion) is *held* sufficient to sustain findings of the special ver-
dict that in making proofs of loss the assured did not wilfully

swear falsely as to ownership of portions of the destroyed property, as to the quantity of articles, such as family supplies and hay and grain on the farm, on hand at the time of the fire, or as to values.

7. Under a policy insuring under separate headings " camp equipage " and " wagons, sleighs, and harnesses in barns," the assured might recover under the latter classification for the loss of a wagon while in a barn, although it may have been used in connection with a lumber camp at other times; and a classification of the wagon as camp equipage in an inventory made after the policy was written and without reference to it, would not be significant upon the intention of the parties in making the contract of insurance.

APPEAL from a judgment of the circuit court for Oconto county: S. D. HASTINGS, JR., Circuit Judge. *Affirmed.*

This was an action by plaintiff, as assignee, to recover a substantially total loss on two fire insurance policies assigned to him, respectively, by Louis Belongia and his wife, Dina Belongia, upon the second of which only are questions raised on this appeal. Mrs. Belongia is shown to have held title, substantially, to the entire family property. She leased a farm and operated it, her husband aiding to some extent, but being largely engaged in his own business as a lumberman and cruiser. She appears to have been the financial head of the household, and to have customarily bought all things needed therefor. Her policy here involved was a standard policy in the sum of $1,595, covering the following items:

"(1) $200.00 on household furniture, including beds and bedding, and sewing machine, while contained in dwelling-house; (2) $150.00 on wearing apparel while contained in said dwelling; (3) $50.00 on family provisions while contained in said dwelling; (4) $200.00 on camp equipage in dwelling and warehouse; (5) $200.00 on hay in barns or in stacks within 500 feet of buildings; (6) $150.00 on farming implements while in barns and sheds, not including threshing machine and power; (7) $165.00 on wagons, sleighs, and harnesses while in barns and sheds; (8) $300.00 on grain in buildings or in stacks on farm; (9) $180.00 on two binders and one mower in barn."

The fire occurred April 14, 1899, and the destruction of the personal property was, with few exceptions, complete. The plaintiff, at the employment of Mrs. Belongia, made out proofs of loss. Attached to each were lists of property substantially copied from an inventory made by her, with the aid of her daughter and husband, during the year preceding the fire, and extending up to a time variously fixed at from six weeks to one or two weeks before the fire. This list was handed over to *Mr. Beyer*, and incorporated in the proofs, and sworn to by the insured. The defense principally relied on was that in making such proofs the insured "fraudulently swore falsely touching the amount, quantity, value, and ownership" of the personal property mentioned.

A special verdict was taken, in which the jury, in response to different questions, found that Dina Belongia did not "knowingly swear falsely" either as to her ownership, as to the quantity, nor as to the value of the insured property, and found the values of the property destroyed under the several policy classifications as·follows (numbers correspond with those of classification above): No. 1, $563.97; No. 2, $261.12; No. 3, $139; No. 4, $100; No. 5, $175; No. 6, $82.20; No. 7, $195; No. 8, $300; No. 9, $125. Whereupon judgment was rendered for the amount so found, not exceeding the amounts limited in the policy, amounting to $1,122.20 on Mrs. Belongia's policy, and $300 upon Louis Belongia's policy, not here in controversy. Defendant, before judgment, moved to set aside each of the answers of the jury negativing false swearing, as also certain answers finding values of property destroyed, and for an order directing judgment for the defendant, and, in case of denial of such motion, that the special verdict be set aside and a new trial ordered. These motions were denied and judgment entered for the plaintiff, from which the defendant appeals.

*H. O. Fairchild,* of counsel, for the appellant.

*D. G. Classon,* for the respondent.

DODGE, J.   The burden of argument in this case was de-
voted to the question of fact whether any evidence supported
the findings that plaintiff did not knowingly swear falsely
either as to her ownership, as to the quantity, or as to the
value of the insured property.   This question was raised on
the trial by a motion after verdict to substitute affirmative
for negative answers to the first, second, and third interrog-
atories of the special verdict, and by a motion for new trial.
The rule of this court is absolutely settled that, if there is
any credible evidence which to a reasonable mind can sup-
port an inference in favor of a party, the question is for the
jury, and the court cannot assume to answer it, either upon
motion for nonsuit or direction of verdict, or by substitut-
ing other answers after the verdict is returned.   At that
stage the court has nothing to do with the question of pre-
ponderance of fairly conflicting evidence.   *Lewis v. Prien,*
98 Wis. 87; *Clifford v. M., St. P. & S. S. M. R. Co.* 105 Wis.
618; *Nicoud v. Wagner,* 106 Wis. 67.   Upon motion to set
aside a verdict and grant a new trial, the trial court enters
a field of discretion in which he may consider whether there
is such overwhelming preponderance of evidence against
the verdict that it ought not to stand.   While this discretion
must be exercised judicially, and may be so clearly abused
as to warrant reversal by this court, that will be done only
in most extreme cases, of which but few have ever arisen.
The superior opportunity of the trial court to understand
the meaning of witnesses must always give to his decision
on such a motion great weight.   *Jones v. C. & N. W. R. Co.*
49 Wis. 352; *Clifford v. M., St. P. & S. S. M. R. Co., supra;*
*Nicoud v. Wagner, supra.*   There are many cases (among
them, *Wunderlich v. Palatine F. Ins. Co.* 104 Wis. 382, cited
by appellant) where we have held that human testimony
may be so in conflict with conceded and established physical
facts as to be incredible, for the reason that its truth is
morally impossible, or so improbable in the course of nature

as to approximate impossibility. *Flaherty v. Harrison*, 98 Wis. 559, 563. Illustrations are: Testimony of a plaintiff that he looked, and did not see a railway train which was conceded to be in plain sight (*Groesbeck v. C., M. & St. P. R. Co.* 93 Wis. 505; *Lenz v. Whitcomb*, 96 Wis. 310); or testimony that plaintiff had at the time of collision driven past a preceding team, when, concededly, his vehicle was found behind it after the collision (*Cawley v. La Crosse City R. Co.* 101 Wis. 145, 150).

The statements made in respondent's proofs of loss are assailed as constituting "fraud or false swearing by the assured touching some matter relating to the insurance or the subject thereof," which by the terms of the policy renders it void. This clause in the standard policy is highly penal. It is not at all aimed at merely protecting the insurer against the specific effect of any fraud, but imposes upon the insured, as a penalty, forfeiture of the whole insurance, although the fraud might affect some trifling portion of it. The penalty upon the assured bears no relation either to the benefit he secures or the injury which he imposes. *Killen v. Barnes*, 106 Wis. 546. Naturally and properly, therefore, more has been required to constitute such fraud or false swearing as will avoid the policy than such as will justify rescission of a transaction thereby induced or recovery of damages thereby occasioned. It is held by an unbroken line of decisions in this court that this penalty is not to fall unless the false swearing is knowingly and wilfully done. It is not enough that it occurs through mistake, carelessness, or inadvertence, or even in unreasonable reliance on information derived from others. *Parker v. Amazon Ins. Co.* 34 Wis. 363; *Dogge v. N. W. Nat. Ins. Co.* 49 Wis. 501; *Cayon v. Dwelling House Ins. Co.* 68 Wis. 510; *Vergeront v. German Ins. Co.* 86 Wis. 425; *F. Dohmen Co. v. Niagara F. Ins. Co.* 96 Wis. 38. In several of these cases it is apparently held that, in addition to the knowl-

edge and purpose to falsify, there must be an *intent* to mislead the company, to induce it to act to its injury otherwise than it would if informed of the truth. *Dogge v. N. W. Nat. Ins. Co.* 49 Wis. 504; *Cayon v. Dwelling House Ins. Co.* 68 Wis. 515; *F. Dohmen Co. v. Niagara F. Ins. Co.* 96 Wis. 55; *Gettelman v. Commercial U. Ass. Co.* 97 Wis. 237, 243. Inasmuch, however, as this further quality was not held necessary by the trial court, and his action in that respect was favorable to appellant, we need not consider it now. Obviously, from these authorities, there is here no place for the doctrine that it is as much fraud to state as true that of which one is ignorant, as that which is known to be false. That doctrine is founded upon the idea that the one statement may be as misleading and as injurious as the other to the opposite party if he acts thereon. *Montreal River L. Co. v. Mihills,* 80 Wis. 540; *Beetle v. Anderson,* 98 Wis. 5; *Hart v. Moulton,* 104 Wis. 349; *Krause v. Busacker,* 105 Wis. 350. In that class of cases, actual misleading of the opposite party to his injury is essential; here it is not. *F. Dohmen Co. v. Niagara F. Ins. Co., supra; Worachek v. New Denmark M. H. F. Ins. Co.* 102 Wis. 88, 91. That severe rule has been adopted by this court as necessary to effectively protect those who innocently act in reliance upon statements of others, but it is inconsistent with the policy of the law which gives to clauses denouncing penalties or forfeitures the strongest reasonable construction to prevent such results. *Wakefield v. Orient Ins. Co.* 50 Wis. 532; *Kircher v. Milwaukee Mechanics' M. Ins. Co.* 74 Wis. 470; *Commercial Bank v. Firemen's Ins. Co.* 87 Wis. 297, 303; *Reisz v. Supreme Council A. L. H.* 103 Wis. 427.

Much of appellant's brief and argument is addressed to the contention that the insured now concedes that she has not positive knowledge, but only information from others, as to certain quantities and values which counsel asserts she assumed and purported to state positively as within her own

knowledge. It has already been pointed out that a state-
ment believed to be true, though false in fact, is not neces-
sarily knowingly or wilfully false, so as to bring down the
penalty of forfeiture; but, apart from that consideration, we
find no support for counsel's assertion that any statements
were in the proofs of loss declared to be upon personal knowl-
edge. The proofs were made on printed forms furnished by
the company, and contain no declaration that the assured
had personal knowledge as to the facts stated; merely that
such facts existed. The form itself evidently contemplates
that the affiant may, and is expected to, therein declare as
to acts of others, of which, of course, she can only have in-
formation. Again, those printed forms are expected to be
used generally, and in very many cases the insured, who by
the policy must make the proofs, cannot have personal knowl-
edge of quantities and values of personal property. The very
requirement for specification of property after it is out of
existence would imply that the affiant is expected to state
only as near as may be as to such property as stocks of mer-
chandise, family clothing and supplies, stocks of grain, and
the like. The insured has a right to suppose the company's
requirements are consistent with the purpose of indemnity,
and that proofs need not be made with more of certainty
than is ordinarily possible after a fire destroying the prop-
erty. This view is confirmed by the policy itself, which only
requires that the proofs shall give the knowledge and belief
of the assured. Of course, assured might assume that the
forms of proof supplied by the company were responsive to
the policy, and that the information called for might there-
fore be given upon belief if she had not knowledge.

In this connection, too, it may be well to refer to a class
of criticisms upon the schedules furnished by the assured
because second-hand property is inserted therein with the
full original cost set against it. The policy may fairly be
understood to demand this, for it requires schedules to be

made, in which shall be inserted "the cost of each article." Whether this refers to schedules to be attached to proofs is perhaps not entirely clear, but it certainly confuses the duty of assured, so that from obedience to it wilful fraud cannot, as matter of law, be attributed to an illiterate farmer's wife.

In the light of the general views already suggested, we have examined the evidence with great care. Of course, a discussion thereof in detail in this opinion would be unjustifiable and serve no good purpose. The principal attacks upon the truth or sincerity of the proofs of loss, perhaps, may be briefly summarized, with some suggestion of considerations which have had weight with us. The falsity of the statements in those proofs with reference to the ownership of some portions of the property is predicated mainly upon inconsistent statements made by the insured in an examination evidently lengthy, involved, and confusing, which was held before the commencement of the suit but after the making of the proofs of loss, wherein she appears to have stated that numerous articles among those specified in the proofs of loss belonged to her husband and were bought by him with his own money. Upon the trial she explained these discrepancies on the ground that she did not understand the subjects of inquiry or her answers thereto, and made mistakes in some of those statements, while others she denied making. She testified positively to the ownership of all such articles of property, except, perhaps, as to certain articles of clothing and a shaving set, which figures largely in appellant's brief, as to which she testified that she bought all the things for the house with her own money, including such articles of clothing for her husband. Evidently in reference to these articles she might have used the word "belonged" in the sense of "pertained," for with reference to various other articles she said they belonged to one or another of her children. As to her ownership of other articles she was confirmed by testimony from other

witnesses. The whole subject was submitted to the jury, who had an opportunity to observe the intelligence of the witness, her ability to understand questions put to her on cross-examination, and to judge of the sincerity of her conduct. Their conclusion that she had accounted for the inconsistencies between her testimony on trial and the record of her examination out of court on a theory other than that of wilful false swearing in her proofs of loss was elaborately argued to the court below, and carefully considered. We cannot say, notwithstanding the direct antagonism of statements on that examination with both the proofs of loss and the testimony on the trial, that the conclusion of the jury could not have been reached by the honest exercise of reason. Such a cross-examination as evidently was imposed upon this woman was well calculated to confuse an illiterate and unbusinesslike woman. The well-known methods of cross-examination were such as to extract from her answers general in form, which she might well have supposed were limited in their application. The accurate terminology of a lawyer may well have been misleading to an illiterate person, and her answers thereto literally have conveyed a meaning which she did not intend.

The assertions of the proofs of loss with reference to quantities were claimed to be false, to the necessary knowledge of the assured, because, as she testified, they were made up absolutely from a list of articles which were on hand at some time before the fire, of which the family supplies, especially, were subject to continual consumption; hence counsel argues that she must have known when she stated the same amounts as on hand at the time of the fire as had been set down in that list prior thereto that she was stating a falsehood. The time of the making of this list is in much confusion. Mrs. Belongia, her daughter, and husband locate it, with reference to the family supplies, all the way from two weeks to six weeks before the fire. Those supplies con-

sisted of the ordinary stock of groceries, evidently bought in considerable quantities, as their home was distant from the market town.   Mrs. Belongia, however, testified as to all of the principal commodities that the amounts put down in the list were considerably less than the amounts actually on hand at the time of making it.   We think this was sufficient to carry to the jury the question whether the inference of known and wilful falsehood must be necessarily drawn from the use of this list without change in making up the proofs of loss.   As to the grain, hay, etc., upon the farm, a similar argument is made, namely, that the quantity at the time of the fire could not have been the same as when the list was made.   This argument is predicated upon the gratuitous assumption that certain live stock shown to have been on the farm was fed therefrom.   Of this there is no evidence.   It does not appear but that there may have been other food for stock, so that the quantities of the insured tame hay, oats, wheat, etc., were not depleted.   It is, however, in evidence that Mrs. Belongia had not personal knowledge as to the quantities of grain or as to what was done therewith, but for the purposes of the proofs relied on the information derived from her husband and perhaps her sons.   This she had an undoubted right to do, and if, relying, she believed in the facts as she stated them, she could not be found guilty of wilful false swearing.

Her statement of values in the proofs of loss is claimed to be knowingly false because she admits that she did knowingly place in the inventory made before the fire the cost value against most of the articles, and continued that same figure in the lists made up to be attached to the proofs.   As we have already pointed out, there was language in the policy indicating that the company demanded of her to insert in such lists or schedules the cost of the property.   Besides, in the proofs of loss there was an estimate of sound value placed thereon, considerably less,— something more than

one third off from the scheduled prices. It is difficult to say in any case that an estimate of value is wilful false swearing. It must of necessity rest in the opinion of the affiant, and, indeed, one may innocently conceive a value considerably more than that which commodities would bring if exposed for sale. Thus, much reference is made to a stove placed in the schedules at $45, its cost price, though it had been used several years. The probability is that such stove could not have been sold for cash at more than one half of its cost, but could the insured have been indemnified by any such sum? It is by no means certain that one can go into the market and find secondhand articles to supply those which have been destroyed, and a housekeeper is not indemnified for the loss of an efficient and useful article unless she can replace it. We do not say that this is the rule of recovery against an insurance company, but that such considerations bear upon the integrity of such a person in estimating the value of an article. However, it seems needless to protract this opinion by further detailed discussion of the evidence. Suffice it to say that after its examination we do not feel justified in saying that the conclusion of the jury and of the trial court that wilful false swearing was not established had nothing to support it, if they believed the plaintiff's witnesses; and, in deference to rules whose wisdom is founded upon the experience of courts, we must refrain from disturbing the conclusion of the jury and of the court below as to the sufficiency of the evidence.

One assignment of a specific error needs attention. Appellant requested an instruction that in answering the question as to the value of " wagons, sleighs, and harnesses while in barns and sheds," they should not include any property covered by the item in the policy covering " camp equipage in dwelling and warehouse." It appeared that in an inventory made up by the assured some time before the fire there had been included certain heavy wagons, bob sleds,

and harnesses, under the heading "Camp equipage," which items were inserted in the proofs of loss under the heading "Wagons, sleighs, and harnesses." It was proved that they were in the barn. Appellant makes a strenuous contention that the classification in the inventory must prevent a different classification in the proofs of loss. We can see no force to this contention, for there is no evidence that the inventory was made either at or about the time that the insurance was written, or with any reference thereto. It therefore cannot be significant upon the intention of the parties in making the insurance contract. The insurance was, of course, not confined to property in existence at the time it was written, but covered such property as the insured might at any time have. Such camp equipage in dwelling or warehouse as existed at the time the policy was written might not be the same on which she was entitled to recover at the time of loss. So, also, wagons, sleighs, and harnesses might differ at the time of the loss. The defendant company had agreed to pay her whatever she might lose, up to the limit fixed, on either of these classes of property; and no reason is apparent why she might not recover for the loss of a wagon which was in the barn under the classification, "Wagons in barns," although that wagon may have been used in connection with a lumber camp at other times. This assignment of error cannot be sustained.

We find no other assignment of error warranting further consideration.

*By the Court.*— Judgment affirmed.