MEYER and another, Respondents, vs. HOME INSURANCE COMPANY and others, Appellants.

*February 2—February 23, 1906.*

*Appeal and error: Findings, when disturbed: Fire insurance: Loss: Provisions of policy: Fraud: False swearing: Special verdict: Records of internal revenue department: Admissibility: Secondary evidence: Actions: Conditions precedent: Exceptions: Objections, how taken.*

1. Respecting the question whether a verdict is sustained by the evidence, and the ruling of the lower court thereon, the supreme court will set aside the findings of the jury only when there is no evidence to sustain the verdict, or where, though there be some evidence in its support, still the great weight of the evidence is against it, and that weight is so reinforced by all the reasonable probabilities and inferences that it becomes overwhelming.

2. In an action to recover for loss under an insurance policy containing a provision: "This entire policy shall be void in case of any fraud or false swearing by the assured touching any matter relating to this insurance or the subject thereof, whether before or after loss," the court instructed the jury: "If you find that the plaintiffs wilfully included in the proofs of loss property removed by them, and such removal or disposition *would secure no advantage to the plaintiffs* in the adjustment and payment of the loss under the policy of insurance, *to the prejudice or injury of the defendants,* and would not be liable to have *that effect,* then there is no legal fraud, unless you find that such acts on the part of the plaintiffs were liable to deceive the defendants and cause them to pay more than they in justice ought to pay," which instruction was given in connection with a question of the special verdict: "Did the plaintiffs, prior to the fire, remove from their factory or dispose of any tobacco or cigars which they afterwards knowingly, wilfully, and with intent to defraud the defendants included in their proofs of loss." *Held,* that such instruction, under the circumstances disclosed by the evidence, stated in the opinion, was not a proper statement of the law, was misleading, and therefore prejudicially erroneous.

3. In such case the fact that the jury found that the amount of plaintiffs' property was more than the amount of loss does not render the instruction any less prejudicial.

4. Under a clause in a fire insurance policy: "This entire policy shall be void in case of any fraud or false swearing by the assured touching any matter relating to this insurance or the subject thereof, whether before or after loss," the presence of the words "false swearing" in connection with the word "fraud" indicates that either wilful fraud or false swearing is designed to have the effect of defeating the policy, regardless of the ultimate effect of the false swearing upon either party to the contract.

5. In such clause the word "fraud" is used in connection with the words "false swearing" to cover frauds otherwise than by false swearing.

6. It is error to intimate or make known to a jury the effect of their answers to questions submitted in a special verdict.

7. Under the laws of the United States and the rules and regulations of the treasury department made in pursuance thereof, respecting internal revenue, the officers of the department cannot be compelled to produce their books in evidence or disclose their contents, and copies of such books are not obtainable except under the regulations prescribed by the department. *Held*, that no effort having been made to obtain evidence contained in such books in the manner provided by law, and the records themselves not being admissible, it was not error to exclude testimony of a witness who had examined such books as to their contents.

8. Such records being privileged and to a certain extent *quasi*-confidential communications, a litigant has no right to the use thereof upon any other basis than such as may be fixed by the United States or under its authority.

9. In an action on fire insurance policies containing a provision that the assured should submit to examinations under oath as often as required, it appeared from the record that one of the plaintiffs appeared before a court commissioner and submitted to an examination of considerable length; that as to many inquiries it did not appear that the witness had personal knowledge of the facts about which she was interrogated, and frankly admitted she did not know, but proffered examination of her manager, whom she said knew the facts, and also offered all books and information under her control. *Held*, there was no violation of such provision of the policies, and no error, predicated on such violation, was committed in failing to hold that the action was prematurely brought.

10. It appeared from the record returned on appeal that it contained a statement that appellants duly excepted to portions of the charge to the jury underscored in the body of the charge; that

the portions of the charge relied upon as excepted to were underscored, and, in the bill of exceptions, that there were particular specifications of the portions of the charge excepted to, setting out under separate heads the language complained of. *Held*, that the exceptions were sufficiently taken.

11. Appellant has a right to make specific objection to the particular part of the charge objected to, and is not obliged to embrace parts of the charge not objectionable in the exception for the purpose of completing a sentence under a separate exception.

12. The object of exceptions is to bring to the attention of the court the particular matter objected to.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Reversed.*

The plaintiffs commenced separate actions against the defendants, which were consolidated and tried together, the questions in controversy being the same in each case. The actions were brought upon insurance policies to recover for loss of a stock of cigars, tobacco, fixtures, and machinery, and the defense made to each was that the plaintiffs were guilty of fraud or false swearing within the terms of the policies. The stock covered by the insurance, exclusive of machinery and fixtures, was insured by defendants at the sum of $10,600. The fire which damaged the property insured occurred about midnight December 17, 1901. Plaintiffs claimed in their proofs, made and served, that the loss on cigars was $9,306.45 and on tobacco $3,602.34. The case was tried by the court and a jury and a special verdict returned, which found that the value of the tobacco destroyed and damaged by fire was $3,152.10 and that the value of the cigars destroyed and damaged was $6,516.20. The jury further found that the plaintiffs prior to the fire did not remove from the factory or dispose of any tobacco or cigars which they afterwards knowingly, wilfully, and with intent to defraud included in the proofs of loss, and that the value of the tobacco and cigars destroyed was not overstated by plaintiffs knowingly, wilfully, and with intent to defraud the defendants. Motions were

made to change the answers to the questions, and to amend the verdict and for judgment in favor of the defendants, and to set the verdict aside and for a new trial, which were denied, and judgment for plaintiffs rendered upon the verdict, from which this appeal was taken.

For the appellants there was a brief by *Fiebing & Killilea,* attorneys, and *J. H. Roemer,* of counsel, and oral argument by *Mr. Roemer* and *Mr. H. J. Killilea.*

For the respondents there was a brief by *O'Connor, Schmitz & Wild,* and oral argument by *A. J. Schmitz* and *Robert Wild.*

KERWIN, J.   1. Error is assigned because the court refused to direct a verdict for defendants and in not amending the verdict and ordering judgment upon it as amended in favor of defendants.   This assignment involves the question whether the evidence sustains the findings of the jury that the plaintiffs did not knowingly, and with intent to defraud, include in their proofs of loss property which, prior to the fire, had been removed from the factory or disposed of, and that the value of the property included in the proofs of loss was not wilfully overstated with intent to defraud the defendants. It is strenuously insisted by appellants that a large quantity of cigars and tobacco had been removed from the stock, disposed of, and included in the proofs of loss, and that the jury by their finding that the value of the tobacco and cigars destroyed and damaged was $3,340 less than claimed in the proofs of loss, in effect found that cigars had been taken out of stock and disposed of prior to the fire and included in the inventory and proofs of loss.   There is considerable evidence on the part of the defendants which tends to support this contention, while on the part of the plaintiffs there is evidence tending to contradict it.   Under the proof submitted the jury might well have found that the property damaged and destroyed was much less than the amount stated in the proofs of loss and yet

impute no bad conduct to the plaintiffs. It is very clear from the verdict that they did not intend to charge plaintiffs with wilfully including in the proofs of loss property not destroyed or overstating the value of the property included, because in their verdict they specifically so found. We have had much difficulty in endeavoring to reconcile the evidence upon the material controverted issues upon the subject under discussion, but are unable to come to the conclusion that the findings of the jury are so far unsupported by the evidence as to warrant us in disturbing them. This court will set aside the findings of the jury and the ruling of the lower court respecting the question whether the verdict is sustained by the evidence only when there is no evidence to sustain the verdict or findings of the jury "or where, though there be some evidence in its support, still the great weight of the evidence is against it, and that weight is so reinforced by all the reasonable probabilities and inferences that it becomes overwhelming." *Bannon v. Ins. Co. of N. A.* 115 Wis. 256, 91 N. W. 666; *Beyer v. St. Paul F. & M. Ins. Co.* 112 Wis. 138, 88 N. W. 57; *Wunderlich v. Palatine F. Ins. Co.* 104 Wis. 382, 80 N. W. 471.

2. Error is assigned because of the following instruction:

"If you find that the plaintiffs wilfully included in the proofs of loss property removed by them, and such removal or disposition would secure no advantage to the plaintiffs in the adjustment and payment of the loss under the policy of insurance, to the prejudice or injury of the defendants, and would not be liable to have that effect, then there was no legal fraud as referred to in this question, unless you find that such acts on the part of the plaintiffs were liable to deceive the defendants and cause them to pay more than they in justice ought to pay."

Each policy contained the following provision:

"This entire policy shall be void . . . in case of any fraud or false swearing by the assured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

The vital question litigated upon the trial was whether there was any fraud or false swearing within the meaning of the foregoing provision. The plaintiffs, to verify their claim of loss, presented to the adjusters their books of account and inventories for the purpose of showing the amount of property on hand at the time of the fire, and it is claimed by defendants that the amount of property so represented as being destroyed and damaged was not in fact on hand or damaged or destroyed. Plaintiffs also made and furnished to defendants verified proofs of loss in which the amount of the loss on tobacco and cigars was stated to be $3,340 more than the amount of the loss as found by the jury, and more than the amount in fact on hand as claimed by defendants. One of the main questions litigated upon the trial, therefore, was whether the plaintiffs, prior to the fire, had removed from the factory or disposed of tobacco or cigars which they afterwards knowingly, wilfully, and with intent to defraud included in the proofs of loss. And upon this issue the court submitted to the jury the following question:

"Did the plaintiffs, prior to the fire, remove from their factory or dispose of any tobacco or cigars which they afterwards knowingly, wilfully, and with intent to defraud the defendants included in the proofs of loss?"

Upon the issue thus raised by this question there was a sharp contest, and the question arises whether the instruction under consideration was a proper statement of the law under the circumstances disclosed by the evidence. It is claimed on the part of the defendants that the plaintiffs were guilty of fraud in representing the amount of property destroyed and false swearing in making their proofs of loss, and there was evidence sufficient to go to the jury upon this question. The evidence properly raised the question submitted; hence it was necessary that the jury be clearly instructed upon the law respecting these controverted facts. The question submitted to the jury embraced a clear statement of the facts necessary to

constitute fraud or false swearing within the meaning of the policy. Whether these facts existed or not was for the jury, and whether, if there was false swearing, it secured any advantage to the plaintiffs in the adjustment and payment of the loss to the prejudice or injury of the defendants was not embraced in the question, and was a matter of no concern to the jury. An instruction respecting the same could serve no proper purpose, and was liable to mislead in view of the testimony in the case. The evidence tended to show that the property damaged and destroyed was less than that included in the proofs of loss. The main point in issue, therefore, was whether plaintiffs had removed or disposed of property which they afterwards knowingly, wilfully, and with intent to defraud included in the proofs of loss. If there was false swearing within the meaning of the policy, it was immaterial whether plaintiffs derived any advantage to the prejudice of the defendants in consequence thereof or not. This is in accordance with the plain terms of the policy. The use of the words "false swearing" in connection with the word "fraud" plainly indicates that either fraud or false swearing was designed to have the effect of defeating the policy, regardless of the ultimate effect of the false swearing upon either party to the contract. False swearing, when knowingly·and wilfully done with intent to defraud the insurer, avoids the policy regardless of the ultimate effect of such false swearing, and it is very plain that the word "fraud" was used in connection with the words "false swearing" so as to cover frauds otherwise than by false swearing. It is clear that if the words "false swearing" be given their plain, ordinary meaning they cannot be held to mean that it was only "false swearing" which worked an advantage to the insured to the prejudice or injury of the insurer in the adjustment and payment of the loss that can avoid the policy. If the plaintiffs knowingly and wilfully, with intent to defraud the defendants, swore falsely in making the proofs of loss, such act amounted to a fraud

upon the defendants which avoided the policies, irrespective of the ultimate effect upon the defendants. If the false swearing must secure an advantage to the insured in the adjustment and payment of the loss to the prejudice or injury of the insurer in order to avoid the policies, the purpose of this provision would, in many cases, be nullified, because the insured, after swearing falsely to proofs of loss in order to recover more than his honest loss, could escape the consequences of his act in case of discovery of such false swearing before payment by the insurer. Such a construction would defeat the object of this wholesome provision designed to prevent fraud and false swearing, and is wholly inconsistent with its purpose and policy. *Beyer v. St. Paul F. & M. Ins. Co.* 112 Wis. 138, 88 N. W. 57; *Moore v. Va. F. & M. Ins. Co.* 28 Grat. 508. The court told the jury in the instruction under consideration, in substance, that if they found that the plaintiffs wilfully included in the proofs of loss property formerly removed by them, and such removal or disposition would secure no advantage to the plaintiffs in the adjustment and payment of the loss to the prejudice or injury of the defendants, and would not be liable to have that effect, there was "no legal fraud as referred to in this question," unless such acts were liable to deceive the defendants and cause them to pay more than they ought to pay. The court by the instruction attempted to define the legal fraud referred to or covered by this question, and injected into it an element wholly foreign to the subject and one well calculated to confuse and mislead the jury. Including in the proofs of loss property not destroyed or damaged by the fire was manifestly liable to deceive the insurer and cause it to pay more than it ought to pay, and the only question was whether such act was done wilfully and with intent to defraud the insurer. *Bannon v. Ins. Co. of N. A.* 115 Wis. 250, 91 N. W. 666. The distinction between actions based upon fraud and fraud or false swearing, within the meaning of the clause in the policy in

question which forfeits it, is clearly pointed out in *F. Doh-men Co. v. Niagara F. Ins. Co.* 96 Wis. 38, 56, 71 N. W. 74:

"No authority can be found, we may safely say, to sustain the contention that fraud which will avoid a policy under such a clause must have the elements necessary to constitute a cause of action based on fraud. Where the deception or artifice practiced results in payment of the loss, in an action brought to recover back the money all the conditions which the learned judge held requisite to make out fraud would be essential to sustain the cause of action. His difficulty grew out of a failure to distinguish between deception and artifice constituting fraud liable to do harm, which avoids a policy of insurance under a contract which so provides, and a cause of action based on fraud."

We think the case at bar is ruled by *F. Dohmen Co. v. Niagara F. Ins. Co.* and *Bannon v. Ins. Co. of N. A., supra,* and that the reasoning of these cases is particularly applicable to the facts here. In the *Bannon Case,* at page 260 (91 N. W. 669), the court said:

"The intentional falsification of books or statements showing a greater amount of property on hand than the fact was, and submission of such books or statements to the adjusters as correct, fulfils every requirement of the condition avoiding the policy, regardless of the fact whether damages actually resulted to the insurance company. Such an act is manifestly liable to deceive the insurer and cause him to pay more than he in justice ought to pay, and the only questions left for the jury are whether it was done, and, if so, whether it was intentionally and wilfully done."

*Commercial Bank v. Firemen's Ins. Co.* 87 Wis. 297, 58 N. W. 391; *Maher v. Hibernia Ins. Co.* 67 N. Y. 283; *Shaw v. Scottish Comm. Ins. Co.* 1 Fed. 761; and *Claflin v. Comm. Ins. Co.* 110 U. S. 81, 3 Sup. Ct. 507, relied upon by counsel for respondents, are considered in the *Dohmen Case,* and further discussion of them would seem unnecessary. Some of the other cases cited by counsel for respondents are where the action was based on fraud and where all the elements of an action for deceit were necessary to be proved; others are where

·the overvaluation or false swearing was not wilful, or with in-
·tent to defraud, or for the purpose of obtaining undue advan-
tage over the insurer, and the circumstances were not such as
to be liable to have that effect.   Such cases are clearly inap-
plicable here, as pointed out by Mr. Justice MARSHALL in the
*Dohmen Case.*   It is also claimed on the part of the respond-
ents that since the amount of insurance upon the tobacco and
·cigars was more than the amount of loss as found by the jury,
the appellants could not be prejudiced by the instruction.   But
this does not follow.   If there was false swearing within the
meaning of the policy, as heretofore defined, the entire policy
would be forfeited and the plaintiffs could not recover any
amount, regardless of the amount of insurance as compared
with the actual loss, or whether they derived an advantage or
·defendants sustained a loss in consequence of such false swear-
ing.   This is the plain purpose and policy of the provision.
*Moore v. Va. F. & M. Ins. Co.* 28 Grat. 508; *Phœnix Ins.
·Co. v. Munday,* 5 Cold. 547; *Beyer v. St. Paul F. & M. Ins.
·Co.* 112 Wis. 138, 88 N. W. 57; *F. Dohmen Co.· v. Niagara
F. Ins. Co.* 96 Wis. 38, 56, 71 N. W. 69; *Bannon v. Ins. Co.
·of N. A.* 115 Wis. 250, 91 N. W. 666.   The instruction under
consideration upon the facts in this case was not a proper
statement of the law, was misleading, and therefore consti-
tutes reversible error.   It clearly gave the jury to understand
that false swearing was not sufficient to avoid the policy un-
less they found that the plaintiffs secured some advantage in
the adjustment and payment of the loss under the policy of
insurance to the prejudice or injury of the defendant, or
would be liable to have that effect.

3.  Error is assigned because the court charged the jury as
follows:

"As to the third, fourth, and fifth questions, the burden of
proof is upon the affirmative of the question, and, inasmuch as
such affirmative answer will prove fraud, you will not an-
·swer," etc.

This portion of the charge is excepted to because the court told the jury the legal effect of their answer to the question. It is claimed, however, on the part of the respondents that the error, if error were committed, was cured by other portions of the charge in which the court specifically told the jury that they must not consider what effect their answers to the questions would have upon the final result in the case—that such matter was exclusively for the court. The purpose of a special verdict is to obtain from the jury findings upon material issuable facts in the case, and the legal effect of such findings is exclusively for the court.    It is not necessary to consider whether the charge to the jury instructing them that they were not to consider the effect of their answers was sufficient to prevent the language excepted to working reversible error, since there must be a new trial regardless of this assignment. It is sufficient to say that the practice of intimating to the jury, or making known to them, the effect of their answers to questions submitted in the special verdict has been held error. *Coats v. Stanton,* 90 Wis. 130, 62 N. W. 619; *Ryan v. Rockford Ins. Co.* 77 Wis. 611, 46 N. W. 885; *Kohler v. West Side R. Co.* 99 Wis. 33, 74 N. W. 568; *Ward v. C., M. & St. P. R. Co.* 102 Wis. 215, 78 N. W. 442; *Conway v. Mitchell,* 97 Wis. 290, 72 N. W. 752; *Chopin v. Badger P. Co.* 83 Wis. 192, 53 N. W. 452; *Reed v. Madison,* 85 Wis. 667, 56 N. W. 182.

4. Error is assigned because of the exclusion of testimony of one W. J. Greer, who was called to testify respecting the government books kept in the internal revenue department in Milwaukee, showing the transactions of plaintiffs with the government before the fire.    Before Greer was sworn one Saveland, deputy internal revenue collector, was called as a witness and requested to produce the books of the department showing plaintiffs' returns to the government of the amount and kind of tobacco destroyed.    The witness testified that under the rules of the department he was not permitted to dis-

close or produce the books, after which the appellants sought
to prove by the witness Greer that he had read the entry made
in the government books showing the amount and kind of to-
bacco which it was claimed was destroyed by fire, and that he
remembered the entry as to the number of pounds and kind of
tobacco destroyed, and, upon being asked to state what the
entry was, the question was objected to and the evidence ex-
cluded.    The testimony of this witness does not appear to have
been very specific regarding the identity of the book which he
examined, nor whether it came from the proper custodian.    It
was argued on the part of the appellants that they were en-
titled to this evidence, it being the best evidence, since they
were unable to produce the original records; but we do not
deem it necessary to discuss the question as to how far sec-
ondary evidence may be admissible in cases of public records,
where such records cannot be produced, because we are well
satisfied that neither the original record in this case nor sec-
ondary evidence of its contents was admissible in evidence, ex-
cept in the manner provided by law.    Under the rules of the
department the collectors are prohibited from giving out such
records or copies thereof or producing such records or copies
in state courts, except that, where copies of documents or rec-
ords are desired on behalf of parties to a suit, such copies
shall be furnished only on a rule of the court upon the secre-
tary of the treasury requesting the same. *Boske v. Comingore,*
177 U. S. 459, 20 Sup. Ct. 701.    The records, therefore, were
privileged and to a certain extent *quasi*-confidential communi-
cations.    *In re Comingore,* 96 Fed. 552.    A litigant has no
right to the use of such record upon any other basis than such
as may be fixed by the United States or under its authority.
Under the laws of the United States and the rules and regu-
lations made in pursuance thereof, the officers of the depart-
ments could not be compelled to produce the books in evidence
or disclose their contents, and they were not admissible, except
in the manner provided by the department. *In re Comingore,
supra; Boske v. Comingore, supra.*    The records themselves

not being admissible, secondary evidence of their contents could not be admitted. 1 Greenl. Ev. § 251; *Gray v. Pentland,* 2 Serg. & R. 23, 29; *Yoter v. Sanno,* 6 Watts, 164, 166. It does not appear that any effort was made on the part of the appellants to obtain this testimony in the manner provided by law. It follows that the evidence of the witness Greer was not admissible and that no error was committed in excluding it.

5. Error is assigned because the court erred in not holding that the action was prematurely brought. It is claimed by appellants that under the provision of the policy—"the insured, as often as required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examinations, all under oath, by any person named by this company, and subscribe the same," etc.— one of the plaintiffs, *Myrtle S. Meyer,* upon examination before a court commissioner, under advice of counsel refused to ascertain or furnish information relating to the subject matter of insurance, and that no action could be maintained until the insured had complied with this provision. It appears from the record that the witness was summoned before a court commissioner and submitted to an examination of considerable length, apparently answering so far as she had knowledge. But in many instances she answered to the effect that she had no knowledge, and referred the defendants to her manager and the books of the concern. It does not appear that the witness had much personal knowledge of the facts about which she was interrogated and frankly admitted that she did not know, but proffered examination of her manager, whom she said knew the facts, and also offered all books and information under her control. From a careful examination of the record we are unable to see that there was any violation of the provision of the policy referred to under this assignment of error. We are of the opinion that no error was committed in not holding that the action was prematurely brought.

6. It is further claimed that no exceptions were taken to the charge, and that the record is to the effect that defendants excepted to the portions of the charge printed in italics. We find, however, on examination of the record that there is a statement to the effect that defendants duly excepted to the portions of the charge underscored in the body of the charge, and also find the portions of the charge relied upon as excepted to underscored, and, in addition to this, there appears to be in the bill of exceptions particular specifications of the portions of the charge excepted to, setting out under separate heads the language complained of. It is also said that the exceptions are meaningless if taken by themselves, and if taken out of the charge would leave it meaningless. We do not regard this contention tenable. Appellants had a right to make specific objection to the particular part of the charge objected to, and were not obliged to embrace parts of the charge in the exception not objectionable, for the purpose of completing a sentence under a separate exception. The object of exceptions is to bring to the attention of the court the particular matter objected to.

It does not seem necessary to consider other errors assigned.

*By the Court.*—The judgment of the court below is reversed, and the cause remanded for a new trial.