## SHAW and others *v.* THE SCOTTISH COMMERCIAL INSURANCE COMPANY.

*(Circuit Court, D. Maine.* ————, 1880.)

INSURANCE—FALSE STATEMENT—FRAUD.—A mere wilfully false statement will not work a forfeiture of a policy of insurance, under a condition that " all fraud or attempt at fraud, by false swearing or otherwise," should cause such forfeiture, when such false statement could not deceive the insurance company to its injury.

TRIAL—PROOFS OF LOSS—OMISSION TO CHARGE.—The omission to charge that the proofs of loss were not evidence of value, although requested by the defendant, did not constitute an error under the circumstances of this case.

LOWELL, J. One Clement insured a stock of goods in the defendant company for $4,500, and it was consumed by fire. The value of the whole stock had been stated to a sub-agent of the defendants, when the insurance was effected, at $8,000, but no issue was raised concerning this representation. As part of the preliminary proof of loss, a sworn

schedule was furnished by Clement, in accordance with the conditions of the policy, in which the goods lost were valued at $6,500. He also submitted to an examination on oath by an agent of the defendants, as required by the contract. There was evidence tending to show that some of his statements in the schedule and examination—but more especially in the former—were false, though it was not admitted or directly proved that they were wilfully so. The insured became bankrupt after this, and the action was prosecuted by his assignees, and resulted in a verdict for the plaintiffs. One point of law reserved at the trial has been argued with so much zeal and ability, and is thought by the defendants to be of so great importance, that I have examined it with care, and shall give my views upon it at more length than its intrinsic difficulty may seem to require.

There is a preliminary matter, which I will first dispose of. The proofs of loss, including the schedule above mentioned, were put into the case by the plaintiffs with the express avowal that they were offered and used merely to prove that the proofs had been duly made. The witnesses who made the schedule had it before them when they testified, and many questions were asked them by both sides as to how it was made up, etc. The paper itself was not referred to by counsel on either side, nor by the court, as evidence of value. The defendants asked me, in writing, to instruct the jury that the paper was not evidence of value. I neglected, by inadvertence, to give this ruling, and this is the first ground upon which a new trial is asked for. Inasmuch as not a word had been said throughout the trial which would lead the jury to suppose that the proofs of loss were evidence of value, but the value was most elaborately argued on both sides on wholly different grounds, and as the proposed instruction was not read in the presence of the jury, so that my silence could not have misled them, I think there was no error in this omission. The supreme court of Maine have decided that, where such a paper is put in without objection, it is evidence for all purposes; but I need not consider that point. *Moore* v. *Providence Ins. Co.* 29 Maine, 97.

The main question of the case arises upon this clause among the conditions in the policy: "All fraud, or attempt at fraud, by false swearing or otherwise, shall cause a forfeiture of all claim on this company under this policy." The instruction desired by the defendants was that this condition had the same meaning as one which is often inserted in policies, that any fraud *or* false swearing shall defeat the claim, and that, under either of these stipulations, a wilfully false oath to a material fact would work a forfeiture of the whole claim.

I gave an instruction that any fraud, or attempt at fraud, however committed, and however small in amount, whether by a false oath or otherwise, would have the effect contended for; but not a false statement, though wilful, by which the company could not be defrauded. The example which I gave of an attempt at fraud was that the plaintiffs should attempt to recover more than was due. I defined a fraud to be the deception of a person to his injury, and an attempt at fraud to be an attempt to deceive a person to his injury; so that I, in effect, required the jury to find an attempted injury, as well as a false statement, if they should find for the defendants on this point.

The insured was the principal witness for the plaintiffs, and he was contradicted in several particulars; and I gave the jury full opportunity to reject his evidence altogether, if they found him to be a perjured witness, or to infer from the whole testimony that he was attempting an actual fraud. Their finding, upon a matter so peculiarly within their province, I did not feel at liberty to set aside.

The particular misstatements which Clement was said to have made in his schedule of loss were very far below the amounts which would be necessary to operate an injury upon the defendants, by causing them to pay more than was due, and very much less than overestimates, which the courts have repeatedly held not to be in themselves sufficient evidence of wilful misstatement to set aside a verdict, even when false swearing was a substantive defence, and when the overestimate tended directly to injure the defendants. It became very important, therefore, for the defendants to put a con-

struction upon the policy which would render any wilfully false statement fatal; and the question is whether that is the sound construction.

In construing a contract, the first and by far the most important witness is the English language. Adjudged cases, which resemble the case at bar to a greater or less extent, cannot often supply the place of the universal and overruling precedent of the common usage of mankind in their daily speech, excepting as they explain terms which have acquired a technical meaning. The only technical word in the condition under examination is fraud; and the authorities are entirely agreed that the word means, in law, what I ruled it to mean. Not that it may not be often used *obiter*, so to speak, in a more loose and general sense, but whenever it needs to be defined, and a case depends upon it, that is its meaning, and, so far as I know, without exception. I understand, therefore, the phrase "fraud" or "attempt at fraud," by false swearing or otherwise, to mean an injury or attempted injury of the defendants, by immoral means, such as false swearing, that being one instance or example of many possible means.

The defendants contend that the phrase makes all false swearing to be a fraud, or an attempt at fraud, so that it would read: "All false swearing or other fraud or attempt at fraud;" but this is a forced and non-natural construction, because it requires not only a transposition of the words, but also a change of the usual meaning of one of them.

The ruling also comports with the general law of insurance, which holds the insured to a rigid line of fair dealing, and gives the underwriter an advantage not given to the parties to most contracts, in that it defeats an honest claim if it has been dishonestly exaggerated. To go further would be to make a law beyond the general law of the land, and beyond the usual meaning of the words of the contract, besides committing the injustice of visiting a crime against morals only with a forfeiture of property in favor of one who could not have been injured by it. To give to the word "fraud" a loose and latitudinarian meaning is inadmissible in such a case.

A safe test of an attempt at fraud is to inquire whether, if it had succeeded, the person who had paid money in consequence of it could recover back the money. No one would contend, I suppose, that these defendants, if they had paid the $4,500, could have successfully maintained an action to recover it back, upon proof that the schedule had exaggerated the loss, which, however, was much greater than $4,500.

Most of the cases which I have seen, including those cited in the briefs, appear to be cases where the *claim* was exaggerated, and, therefore, where every dollar that was falsely added tended directly to defraud the underwriter. For instance, in *Geib* v. *Ins. Co.* 1 Dillon, 443, the charge was: "If you find from the evidence that the plaintiff, in the proofs of loss, knowingly and falsely made a fraudulent overvaluation of the property with a view to deceive the insurance company, and to induce them to pay more than the value of the building, then he cannot recover." In a case in this court a verdict was rendered for the defendants and sustained upon proof of a wilful misstatement of about one dollar in an insurance of several hundreds, where the dollar was part of the claim of loss. The rulings in all the following cases, from some of which general remarks concerning the good faith required of the assured are cited in the defendants' brief, will be found, when carefully examined, to relate to an overvaluation of the same character. *Huchberger* v. *Home Ins. Co.*, 5 Biss. 106; *Howell* v. *Hartford Ins. Co.* 3 Ins. L. J. 659; *Haigh* v. *De La Cour*, 3 Camp. 319; *Levi* v. *Baillie*, 7 Bing. 349; *Chapman* v. *Pole*, 22 L. T. N. S. 306; *Goulstone* v. *Royal Ins. Co.* 1 F. & F. 276; *Britton* v. *Royal Ins. Co.* 4 F. & F. 905.

A more common form of condition than that used in this policy is that any fraud or false swearing shall destroy the claim. The courts hold that this means wilfully false swearing in some material particular, and they sometimes speak of it as fraudulently false swearing; and the defendants insist that this ruling makes fraud and false swearing identical in insurance cases. But it is plain that if the parties

choose to contract that any wilfully false swearing to a material fact shall defeat the claim, the courts may hold them to their agreement. without a violation of principle, and may, perhaps, look to the policy as a whole, to ascertain what the parties consider a material fact.

There are a few cases in which perjury in respect to facts required to be disclosed, such as title, etc., has been held to work a forfeiture, under the contract of the parties, although no court or jury could have said that any attempt to defraud the company had been made. If the courts have used the word "fraudulent" in qualifying such a statement, they must be understood by the context as using the word, in a somewhat loose sense, for dishonesty, in a material particular, without intending to change the definition of fraud, which did not enter into the question. I do not know whether there are many such cases. Even in construing this broad condition, the distinction between perjury and fraud has sometimes been insisted on, as in *Marion* v. *Great Republic Ins. Co.* 35 Mo. 148. I do not think it necessary to inquire whether the preponderance of authority is one way or the other on this point, when there is a distinct stipulation against false swearing.

Two cases are cited by the defendants as laying down the rule which they say should govern this case. In *Park* v. *Phœnix Ins. Co.* 19 Q. B. (Upper Canada,) 110, £2,500 were underwritten on buildings and machinery by the defendants and others who were to contribute, and the loss was sworn at £3,750. The condition of the policy avoided the claim, "if there appears any fraud, overcharge, or imposition, or any false swearing." Page 119. The sixth plea averred an "overcharge," in that £3,750 was said to be the loss, when in truth it was but £1,500. The seventh plea averred fraud in this: that, with the intent to impose on the defendants and procure them to pay more than the loss, which was £1,500, they delivered a false and fraudulent account. The eighth plea set up false swearing in stating the loss at £3,750, when it was only £1,500. The chief justice charged the jury that, in order to defend successfully under either the sixth or sev-

enth plea, "it was necessary to prove that there was a designed overvaluing, with a view to obtaining a larger sum than the actual amount of the loss sustained would enable the party to recover;" and "reminded" them "that there was really no ground for supposing that the plaintiff or Beemer intended, by overvaluing the property, to obtain more than the actual amount of the loss, unless it was clear that such actual loss was less in amount than the £2,500 insured." He added the remark, relied on by the defendants, "that where the insured in any such case named a larger sum as his loss than it really amounted to, it might have the effect of leading the insurers to be less careful in inquiring into the fact than they otherwise would have been, and that a designed misstatement, with such a view, would, of course, be fraudulent."

The defendants understand the learned judge to charge, in this last sentence, that a false statement, with a view to induce the insurers to be less careful in investigating the loss, would be a fraud; when he had just before charged that there could be no fraud unless the loss was less than the amount insured. If this were his meaning it would be impossible to reconcile the contradictions of the charge. The policy provided against fraud and false swearing as two distinct things, and I understand him to say that there could be no overcharge or fraud under pleas 6 and 7, unless the loss were less than the sum insured; but that there might be false swearing under plea 8, if an intentional falsehood was sworn to with intent to prevent investigation. I do not mean to say that this is very clearly expressed, but it is the fair construction, and the only one which makes the ruling intelligible, or which is consistent with the pleas, which do not charge fraud excepting as thus understood. So, in *Seghetti* v. *Queen Ins. Co.* 10 Low. Can. Jur. 243, the condition was against fraud or false statement, and the pleas were—*First*, fraud in stating the loss at £2,129.77, when it was only £500, (£800 having been insured;) *second*, a false statement by the insured.

The other case is *Sleeper* v. *New Hampshire Ins. Co.* 36 N.

H. 401, where the insurance was $600, and the plaintiff swore to a loss of $1,000. A referee found that the insured believed himself to have lost $600, but not $1,000, and that his motive for the falsehood probably was to obtain a speedy settlement. Two of the three learned judges held that this was an attempt at fraud under a clause exactly like that now in question. With unfeigned respect for the opinion of a very able and learned court, I think they permitted an abhorrence of falsehood to induce them to give to the word "fraud" a meaning beyond its true and legal meaning. I am unable to see that it is a fraud to induce one to pay a just debt by immoral means. Falsehood is bad, but so is injustice, and it is not just to deprive a perjurer of his property merely because he is a perjurer. "It is not indictable," says Mr. Bishop, "to induce one, by lying representations, to pay a debt he justly owes, because he is not thereby legally injured." Bishop Crim. Law, § 525. That is, because fraud imports an injury, and perjury does not.

There must be judgment on the verdict.