P. F. DALTON, Appellee, v. THE MILWAUKEE MECHANICS' INSURANCE COMPANY, Appellant.

Fire insurance: REFORMATION OF POLICY. Where a provision in a policy for concurrent insurance has been omitted by oversight, equity will reform the contract to correspond with the understanding of the parties.

Insurance of mortgagee's interest: REFORMATION. A mortgagee in possession of personal property has an insurable interest, and where it was the understanding that a policy should be written to cover such interest, but the agent failed to write it in conformity with the agreement, equity will reform and enforce the contract as mutually intended. Evidence reviewed and held sufficient to authorize reformation.

Insurance by mortgagee: FALSE REPRESENTATIONS. A bank official having authority to loan its funds, may take as security a note and mortgage in his own name, and may insure the property as mortgagee in possession and collect the same in case of loss; and his statement in procuring insurance on the mortgaged property that he was a mortgagee, even though the funds loaned belonged to the bank, is not such a false representation of his interest in the property as to avoid the policy, especially where the agent at the time of issuing the policy was advised of the facts.

Proof of loss: FALSE STATEMENT: INTENT. A false statement in proof of loss is not a defense in an action on an insurance policy, unless it is shown that it was made with intent to deceive and that prejudice resulted.

Insurance: INTEREST OF MORTGAGEE IN POSSESSION. Where a mortgagee in possession of a stock of goods insures his interest and the policy is renewed indicating a continuance of the business, the company cannot insist that the insured had no interest at the time of the loss, on the ground that the proceeds of sales equaled the debt, the owner having agreed with the mortgagee that the store should be kept a going concern and the net profits applied on the debt.

*Appeal from Plymouth District Court.*— HON. F. R. GAYNOR, Judge.

FRIDAY, JANUARY 13, 1905.

ACTION in equity to reform certain of the provisions of a policy of fire insurance and for judgment for the face amount of such policy. From a decree and judgment in favor of plaintiff, the defendant appeals.— *Affirmed.*

*Wright & Stout* and *Zink & Roseberry,* for appellant.

*Martin & Martin* and *McDuffie & Keenan,* for appellee.

BISHOP, J.— The action having been brought in equity, and tried as an equitable action, it is here for trial *de novo.* From the record it appears that Baron Bros. were formerly general merchants doing business at Le Mars, this State. In September, 1899, said firm bought from one Johnson a stock of clothing situate in another building in Le Mars, and thereafter operated both stores. In part payment of the stock said firm gave Johnson a promissory note for the sum of $5,500, due in one year, with interest at 8 per cent., and to secure the same executed a chattel mortgage covering such clothing stock and any additions that might be made thereto, which mortgage was at once made a matter of record. On the same day the said note and the mortgage securing the same were sold and assigned to the First National Bank of Le Mars. In January, 1901, Baron Bros. made an assignment for the benefit of creditors to one G. A. Sammis, and he accepted the trust and took possession of the property of the firm, including both stocks of goods. It appears that in February following an arrangement was entered into, the active participants being Dalton, Baron Bros., and Sammis, assignee, whereby a sufficient sum of money was to be advanced through Dalton to Sammis to satisfy the claims of the general creditors of Baron Bros., said firm to execute a note for such amount, due on demand, and to secure the same by a chattel mortgage on the general stock of goods. In

accordance with this arrangement, Dalton did pay to Sammis the sum of $9,500. That the money so used belonged to and was the property of the First National Bank of Le Mars is undoubtedly true. Thereupon both stocks of goods were released from the assignment proceedings, and Baron Bros. resumed possession. The firm at once executed a demand note for the amount named, and by direction of Dalton such was made payable to G. A. Sammis, agent. A mortgage on the general stock to secure said note was also executed, Sammis being named as mortgagee, and this was made a matter of record. Immediately thereafter Sammis, still acting under directions of Dalton, assigned said note and mortgage to Dalton, and delivered the same to him.

Upon retaking possession of the stocks of goods, Baron Bros. procured policies of insurance covering such goods to be written by local recording agents, and these were issued in the name of the firm, "loss, if any, payable to mortgagee as his interest may appear." The insurance companies interested declined to carry risks upon property so situated and incumbered, and ordered the policies canceled. One of the agents who had thus written policies was R. J. Koehler, who wrote the policy here in suit as the agent of the defendant company. Dalton was advised of the situation, and in company with Sammis he at once went to Koehler to see what could be done. In respect of what transpired at the time there is some conflict in the evidence. We think, however, that it fairly appears that Koehler was familiar with the situation. And it certainly appears that he suggested as a solution of the difficulty that Dalton should take possession of the goods under his mortgage, whereupon policies could issue to him direct. Dalton stated that he wanted insurance in the total sum of $15,000, of which Koehler was requested to write the sum of $8,000, and this Koehler agreed to do. Dalton at once demanded and was given possession of both stocks of goods, and removed the clothing stock, placing it in the storeroom with the general stock. Upon taking

possession Dalton put Sammis in charge of the goods.    This
having been done, Koehler, without any further conference
or directions, and without any request for further informa-
tion, and on March 22, 1901, issued policies in the name of
Dalton; one of such being the policy in suit for the sum
of $3,000 in the defendant company.    By oversight no in-
dorsement was made on such policy respecting concurrent
insurance.    Koehler delivered the policies to Sammis for
Dalton, and received the amount of the premiums.

It does not appear that thereafter any formal steps
were taken looking to foreclosure of the mortgages.    Sammis
continued in the conduct of the business under his employ-
ment by Dalton, and made sales in ordinary course at retail.
A portion of the proceeds were used to replenish the stock
and to pay expenses, and the balance deposited in the bank
in the name of Sammis, agent.    On March 22, 1902, the
policies, including the one in suit, were renewed for another
year, and the premiums paid by Sammis.    On April 6, 1902,
the property was wholly destroyed by fire.    It is conceded
that the value of the goods on hand at all times exceeded
the sum of $15,000.    The proofs of loss made by plaintiff
recite that " the property belonged at the time of the fire to
P. F. Dalton as mortgagee, and no other person had any
interest therein except Baron Bros.' equity therein as mort-
gagors "; and again, " At the time the insurance was effected,
the property described belonged to P. F. Dalton as mort-
gagee," etc.    Other facts material to be considered will be
mentioned in connection with the various subjects to which
they have relation.

I.    The plaintiff seeks to have the policy in suit re-
formed so as to show consent for concurrent insurance.
Counsel for appellant are frank to admit that the evidence

1. FIRE INSUR-
ANCE: refor-
mation of
policy.

warrants the conclusion that it was understood
and intended by both Koehler and plaintiff
that a provision for concurrent insurance should
be inserted in the policy, and that such provision was omitted

by Koehler through oversight. In point of fact Koehler did at the time write policies in other companies for which he was agent concurrent with the policy in suit. Counsel also concede that under the uniform holdings of this court equity will decree reformation in such cases. It is said, however, that the rule thus in force in this State has been repudiated by the Supreme Court of the United States in the somewhat recent case of *Northern, etc., Co. v. Grand View, etc., Co.,* 183 U. S. 306 (22 Sup. Ct. Rep. 133; 46 L. Ed. 213), and we are asked to abandon the rule of our former cases and accept of the doctrine announced in the case cited. This we decline to do. We are satisfied that the enforcement of the rule long since adopted in this State has been the means of effectuating justice in many cases, and we are not reminded that it has worked a hardship unjustly in any. The rule is consonant with the spirit of equity, and, in our view, should be adhered to.

II.     It is to be observed that the policy in suit was issued to P. F. Dalton without any words of qualification. In the petition it is alleged that the policy applied for and **2. INSURANCE** agreed to be issued was one insuring the **OF MORTGA-GEE'S INTER-** property and plaintiff's interest therein as a **EST: ref-ormation.** mortgagee in possession; that the agent failed to insert provisions in the policy to make it correspond with and effectuate the understanding, and in that respect reformation is prayed for. That plaintiff, as a mortgagee in possession of personal property, had an insurable interest therein, is true beyond question. And it is equally clear that, if the understanding between plaintiff and the recording agent of defendant was that a policy was to be issued to cover the mortgage interest of the former, and the agent, in writing the policy failed to make it conform in terms to the agreement, a court of equity has power to reform the contract, and enforce it as it was mutually intended to be made. *Esch v. Insurance Co.,* 78 Iowa, 334; *Blake, etc., Co. v. Insurance*

*Co.,* 73 Wis. 667 (41 N. W. Rep. 968); *Williams v. Insurance Co.* (C. C.), 24 Fed. Rep. 625.

To the propositions of law thus stated counsel for defendant do not demur. Their contentions are directed wholly to the fact questions involved. It is the argument that no mistake of fact was made; that the mistake, if one there was, had relation to the legal effect of the policy as written, of which effect plaintiff was as free to judge as the defendant. The contentions thus made cannot be sustained. To begin with, and stating our conclusions as to the facts, Koehler was well advised in advance respecting the mortgage relation existing between Dalton and Baron Bros., and well knew that the companies that he represented would not carry insurance on the property taken out in the name of the mortgagors. Dalton went to Koehler, not in the capacity of a client, as counsel seem to think, but as to one representing the defendant and other insurance companies; and his mission was to ascertain upon what terms and in what way the companies would consent to carry policies protecting his interests. Koehler proposed that if Dalton would take possession of the stock, and put a man in charge of his interests, he (Koehler) would issue policies in the name of Dalton. This was agreed to by Dalton and it was left for Koehler to write up and deliver the policies. It is true that it was not said in so many words that the policies were to be issued to P. F. Dalton, mortgagee in possession; but that such was the understanding we can have no doubt. And we may get at such understanding from all the circumstances appearing, including what was said by the parties. Both knew that the interest proposed to be insured was that of a mortgagee in possession, and that such would continue to be the status of matters for an indefinite period, and this is witnessed by the requirement made by Koehler that a representative of Dalton should be kept in possession. Both knew that Dalton would not become owner by virtue of the mere act of taking possession, and that at best a legal fore-

closure could not be accomplished until after the lapse of a considerable length of time. Both were experienced business men — the one a banker, and the other an insurance agent of many years' standing — and neither intended to make a contract the validity of which would be open to debate. Moreover, Dalton had nothing to do with the writing of the policies, and he did not see them until after the fire. He left Koehler, believing that he had arranged to have his mortgage interest protected, and that Koehler would write the contract to accomplish that end. This Koehler must have known, and, as we think, he intended to so write as to effectuate the mutual understanding. Whether his omission was the result of carelessness or arose out of a mistaken notion on his part that the policy as written was sufficient to express the understanding is immaterial. His mistake as to the legal effect of the language selected and employed by him in writing up the contract could not operate to change the essential facts as to the understanding and intention of the parties, or deprive either of them of any right under the contract as actually agreed upon. We conclude that a case of mistake of fact was made out, and that plaintiff was entitled to the relief in the respect granted by the decree.

III. It is a provision of the policy in suit that it shall be void " if the interest of the insured in the property be not truly stated therein, or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss." In an amendment to its answer the defendant charges that the policy of insurance is void, and for that reason should not be reformed or enforced, and this because — first, plaintiff was a mortgagee of the property in name only, and that the mortgage and the note secured thereby at all times belonged to and were the property of the First National Bank of Le Mars; second, plaintiff, in making proof of

3. INSURANCE BY MORTGAGEE: false representations.

loss after the fire, swore falsely, in that therein the statement was made by him under oath that the property belonged to him as mortgagee, and no other person had any interest therein except Baron Bros.' equity as mortgagors, whereas in fact the mortgage and the note secured thereby was the sole property of said bank. Neither contention, as thus made, can be sustained. As to the first, the record does not disclose that any statement was made by plaintiff as to his interest in the property, save that which was orally made to Koehler at the time the issuance of the original policy was arranged for. He then declared truly that his interest was that of a mortgagee. We need not stop to consider what might have been the effect had he been called upon for a more specific statement, and had given answers that were untrue. As to the second, it appears that of the moneys of the First National Bank, Dalton, its president and manager, advanced to Sammis, as assignee, a sufficient sum to enable him to settle with the general creditors of Baron Bros. That this was done pursuant to an arrangement with said firm cannot be doubted, although we are not advised as to the details. As a part of the arrangement it was contemplated that a mortgage should be executed by said firm to secure such advancement, and accordingly Sammis, acting for Dalton, took the note for $9,500 and the mortgage to secure the same, which he at once thereafter assigned to Dalton. It is contended by counsel for appellant that this note covered not only the money advanced, but the balance due on the Johnson note, held by the bank. It is true that in the reply some language is used indicating such to be the fact. The evidence, however, shows the truth to be otherwise. Now, Dalton took and continued in possession of the goods in his own name, and Sammis, and afterwards one Shaffer, continuously acted as his agents in conducting the business and in accounting to him for the proceeds. It is undoubtedly true that Dalton regarded the bank as having a beneficial interest in the note and mortgage; indeed, he testified that he

was acting in the interests of the bank, and the note and mortgage were deposited in the bank. It does not appear, however, that any formal transfer thereof was ever made by him. This, in substance, was the fact situation under which Dalton verified the proofs of loss. Therefrom this question arises: Was the oath made by Dalton a false one, and, if so, was it so far material in character that a forfeiture of all rights under the policy should be imposed by a court sitting in equity? Going back to the beginning, and to get at the relations between Dalton and the bank, it may be assumed that the former had the right to loan the moneys of the latter. It cannot be assumed that he had the right to loan such moneys and take the securities in his own name. This he did, however, and accordingly we have Dalton with the securities and the bank with nothing to evidence the disposition of its money. We may concede that the bank could have demanded an accounting, or could have required an absolute transfer to it of the securities. It did not do so, and from this but one conclusion can follow: that the bank was willing to look to Dalton for an ultimate accounting, and Dalton was willing to personally assume all responsibility for the amount of the money thus taken and loaned. Even if the meager statement of facts which the record presents would enable us to do so, we should not feel compelled to enter upon a precise definition of the legal relations existing between Dalton and the bank — whether of debtor and creditor, agent and principal, or trustee and *cestui que trust*. It is sufficient to say that in either relation, keeping in mind the fact that he was in possession, he had the right to insure the property in his own name, and, the bank offering no interference, he could collect the proceeds in case of loss. *Carter v. Insurance Co.,* 12 Iowa, 287; *Strong v. Insurance Co.,* 20 Am. Dec. 515; *Riggs v. Insurance Co.,* 125 N. Y. 7 (25 N. E. 1058; 10 L. R. A. 684; 21 Am. St. Rep. 720); *Roberts v. Insurance Co.,* 165 Pa. 55 (30 Atl. Rep. 450;

44 Am. St. Rep. 642) ; May on Insurance (2d Ed.), section 80 ; 13 Am. & Eng. Enc. of Law, 177, 217.

It is well settled that a false statement in proofs of loss cannot be made available as a defense in any event unless shown to have been made with intent to deceive, and that prejudice resulted. There was no at-

4. PROOF OF LOSS: false statement; intent.

tempt to make proof in such respects in the instant case. *Miller v. Insurance Co.,* 31 Iowa, 216 ; *Carey v. Insurance Co.,* 97 Iowa, 619 ; *Erb v. Insurance Co.,* 98 Iowa, 606 ; *Huston v. Insurance Co.,* 100 Iowa, 402. Moreover, the defendant knew before the trial of the relations between Dalton and the bank. Had it been apprehensive of any conflict of interest between them by which its rights could be affected in any way, a simple notice to the bank would have required it to come in and assert any rights it might have, or forever after hold its peace.

IV.   Next in order we have the contention by appellant that at the time of the fire Dalton had no further interest in the property insured, for that the debt secured by his mortgage had been fully paid. We are not

5. INSURANCE: interest of mortgagee in possession.

advised as to the precise terms of the mortgage. It may have provided that the lien thereof should attach to goods subsequently acquired, or it may not have so provided. Be the fact as it may, we think it immaterial. It is reasonably certain that the course pursued whereby Sammis, acting for Dalton, used the sale proceeds to pay expenses and to replenish the stock from time to time was known to and acquiesced in by Baron Bros. In the absence of a complaint by creditors or lienholders, we see no reason why the parties in interest might not agree that, instead of strict foreclosure proceedings being resorted to, the store should be maintained as a going concern, the net proceeds to be applied in extinguishment of the mortgage liens. As the defendant company wrote its policy to secure the interest of the mortgagee in possession, and made no requirement as to foreclosure, we are unable to discover

any grounds for complaint upon its part. There are several reasons why it ought not to be heard to complain. It wrote the policy for a year, and then renewed it for another year, thus indicating that it expected the store to continue as a going concern. The value of the goods on hand was at all times largely in excess of the insurance carried, and at the time of the fire such value amounted to about $20,000. There was nothing in the situation or course of proceeding that could in any way increase the hazard or otherwise affect the risk. There is no showing of deceit, fraud, or prejudice.

A word now as to the Johnson mortgage. As we think, such mortgage interest was not covered by the policy in suit. In respect thereof plaintiff was not mortgagee, and it is contended that he had no insurable interest. This seems to have been the thought of counsel for plaintiff also, as in the petition in this action the mortgage to Dalton is alone mentioned as forming the basis of the action. As we have seen, the clothing stock was transferred to the general store, and, in the absence of proof to the contrary, we will assume that the net proceeds from sales thereof were applied in payment of the debt to the bank, as the net proceeds from general stock sales were applied on the Dalton note. At the time of the trial Dalton testified that the balance due on the bank note was $1,322.45; that on the note held by him the unpaid balance was $10,989.60. As related to the matters referred to in this paragraph, the cases of *Edwards v. Cottrell,* 43 Iowa, 194, and *Robinson v. Gray,* 90 Iowa, 699, and other like cases, cited by counsel for appellant, have no application. We may concede that in general, where a mortgagee takes possession, and thereafter sells from the mortgaged property, the money or proceeds coming into his hands operates *eo instante* to satisfy *pro tanto* the mortgage debt. But it is otherwise where consent is given, and such is the case with which we have to deal.

V. Other matters of contention presented in argument are sufficiently referred to in the foregoing paragraphs, and

may be regarded as disposed of by what is there said. We are unable to agree with the trial court as to the amount for which plaintiff should have judgment, due, perhaps, to some confusion in the record in respect of the exact total amount of insurance in force at the time of the fire. The case is therefore ordered remanded to the trial court, with instructions to make ascertainment of the amount for which, under this opinion, and in accordance with the facts, plaintiff is entitled to judgment, and correct the decree as may be found necessary. In all other respects the decree is *affirmed*.