## FUHRMAN *v.* SUN INSURANCE OFFICE OF LONDON.

1. INSURANCE—INSURABLE INTEREST—SALE OF INSURED PROPERTY.

    Evidence that plaintiff, suing to recover insurance on certain lumber, had sold the property but had not been paid in full and that he claimed that the scale as estimated by the buyer was deficient and fraudulent, that he stated the facts to the insurance agent of the defendant who made a personal examination of the lumber and his estimate confirmed plaintiff's claim as to the incorrectness of the vendee's scale, *held*, to support the contention that plaintiff owned an insurable interest, at least in such part of the lumber as had not been scaled or paid for, although the contract of sale provided that title should pass to the buyer upon inspection or payment of any part of the price.

2. SAME—FRAUD—CONCEALMENT.

    It was not necessary to show that plaintiff stated the exact amount which he had been paid on the deal, unless information was asked for by the agent upon that subject.

3. SAME—PAYMENT—EFFECT ON INTEREST OF INSURER.

    Receipt of a portion of the purchase price by the insured after the issuance of his policy did not avoid the policy or effect any change in the title of the property which remained in the possession of the plaintiff.

4. SAME—FRAUDULENT PROOF OF LOSS.

    Where the insured had stated the facts concerning the sale to the agent of defendant who was present when its adjuster investigated the loss, to whom the plaintiff men-

tioned only one of the buyers who had contracted to take his lumber, and the plaintiff signed a sworn statement regarding his loss, but claimed to have overlooked the omission, there was no injury to the insurer shown which would avoid the policy for fraud.

5. SAME—FRAUD—PROOFS OF LOSS.

Also where the plaintiff claimed that he did not know anything about a false statement contained in a schedule attached to the proofs of loss and denied swearing to it, there was not such a fraudulent statement as would avoid the policy.

Error to Presque Isle; Emerick, J. Submitted January 21, 1914. (Docket No. 106.) Decided June 1, 1914.

Assumpsit by Gustave H. Fuhrman against the Sun Insurance Office of London upon a policy of fire insurance. Judgment for plaintiff and defendant brings error. Affirmed.

*Joseph H. Cobb (Bates, Harding, Edgerton & Bates, of counsel)*, for appellant.

*I. S. Canfield*, for appellee.

On the 10th day of December, 1909, plaintiff, who was the proprietor of a small sawmill, entered into a written contract with the Michigan Manufacturing & Lumber Company, by the terms of which he agreed to sell all hemlock lumber and cedar that he would have during the following winter at a certain price per foot for the several grades and classes.

"Lumber to be delivered at La Rocque as directed by the second party. Cedar to be delivered at La Rocque as directed by the second party. Delivery to be made before March 15, 1910."

"All inspection to be done by A. J. Fortier or some other competent inspector to be furnished by said second party.

"The title to all material passes absolutely to the purchaser upon inspection of same, or upon any money being advanced on same."

It was the plaintiff's claim that, attached to this written contract, was a paper writing containing specifications for the sawing of the lumber, and also a provision that, in case plaintiff was not satisfied with the inspection, he could have the lumber reinspected.

About the same time the plaintiff entered into an oral contract with one Reuben Mitchell, by the terms of which he agreed to sell to said Mitchell the hardwood lumber which he expected to manufacture during the following winter. Under these two contracts the plaintiff proceeded to manufacture certain lumber. This lumber he delivered as required by both contracts at La Rocque, where it was piled. Various advances were made to him from time to time by A. J. Fortier, representing the Michigan Manufacturing & Lumber Company and by Reuben Mitchell on account of the contracts. On March 15, 1910, a meeting was had between the plaintiff, Mr. Fortier, and Mr. Mitchell at Millersburg, where the account was gone over, and it was claimed by Fortier and Mitchell that a settlement was arrived at in the course of which the balances due to the plaintiff were determined and checks were given marked "in payment in full for lumber," which checks were afterwards cashed by the plaintiff. Plaintiff denies that this settlement was in full of his demands, and claims that the scale of the lumber in question was fraudulent. He notified both Mr. Fortier and Mr. Mitchell not to move said lumber until a rescale could be made. This being the situation on May 21, 1910, plaintiff applied to the defendant's agent, William Schmidt, for a policy of insurance upon said lumber. He claims to have disclosed to the agent Schmidt the exact condition of the title, that the scale given him by the scaler employed by Fortier and Mitchell was fraudulent and much too low, and that upon a proper scale his interest in the

lumber then piled at La Rocque would amount to some $800 or $900. Whereupon, on May 21, 1910, the defendant caused to be issued to the plaintiff a policy of insurance in the sum of $600, covering said lumber, for which plaintiff paid a premium of $7.50. The policy was to run for four months. On June 14, 1910, the lumber was in whole or in part destroyed by fire. Plaintiff at once notified the agent of the defendant company, and a Mr. Spear, of Bay City, went to Mr. Fuhrman's farm north of La Rocque in company with Mr. Schmidt, the local agent, where the loss was adjusted at the sum of $520. The proofs of loss, which were in part prepared in Bay City, and in part at the plaintiff's farm, stated:

"The property described in said policy belonged, at the time of the fire herein mentioned, to Gustav H. Fuhrmann, and no other person or persons had any interest therein, except as follows: Agreed to be sold to Reuben Mitchell of Millersburg—no other interest."

It is the claim of the plaintiff that at this time he fully disclosed to Mr. Spear the fact that Mr. Fortier's company likewise had an interest in the lumber, and that he did not notice the omission of the name of the Michigan Manufacturing & Lumber Company in the description of the property. Upon receipt of the proof of loss the defendant company sent to the agent Schmidt a draft for $520 in payment of the loss, which Mr. Schmidt delivered to plaintiff, taking a receipt and a surrender of the policy therefor. This check was delivered by Schmidt to the plaintiff on June 29, 1910, and he thereupon wrote the following letter to the defendant company:

"SUN INSURANCE OFFICE OF LONDON,
          "Chicago, Ill.
*"Gentlemen:*
"I herewith inclose you draft, duly indorsed, also receipts duly signed. As I cannot get the draft cash-

ed here, you would oblige me if you would send me the currency by registered mail.

"Thanking you for your promptness in the matter, I am, respectfully yours,

"GUSTAV H. FUHRMANN."

This letter was received by the defendant company on June 29, 1910. On June 30, 1910, Reuben Mitchell sent a telegram to the company as follows:

"Defer payment of loss on lumber at La Rocque to Fuhrmann until investigated. See letter."

On the same day Mitchell wrote a letter to the defendant, to which the name of G. Covey, Jr., was signed by typewriter, as follows:

"MILLERSBURG, MICHIGAN, June 30, 1910.
"[On the letter head of Mr. Mitchell.]
"THE SUN INSURANCE CO.,
        "Chicago, Ill.
"*Dear Sirs:*

"I understand your company had a recent fire on lumber at La Rocque station, Hawks post office, Presque Isle county, Michigan, on policy issued to August Fuhrmann, which loss has been adjusted and, I am told, paid. This lumber belonged to R. Mitchell, of Millersburg, Mich., and the circumstances connected with this indicate incendiarism and point suspicion towards Fuhrmann. Kindly do me the favor to furnish me with full details as to when the insurance was effected, by whom, its amount, and the proof of loss which were furnished to your company. As the matter stands, it now looks as if a crime had been committed, as well as a civil wrong, and I trust I may have your assistance in investigating this matter and punishing the criminal, if we can secure the evidence to do it.

"Very respectfully yours,
        "G. COVEY, JR.,
        "Prosecuting Attorney."

This letter seems to have been dictated by Covey, but actually written by Mitchell.

And on September 10, 1910, the following letter was written signed by Mitchell himself:

"SUN INSURANCE CO.,
          "Lansing, Mich.
*"Dear Sirs:*
     "Your letter of August 18 received during my absence from home; hence this delay in answering. The matter of Fuhrmann has been placed in the hands of the prosecuting attorney, and we are awaiting developments. It matters not what Fuhrmann claims due him on the lumber. He has received every dollar for this lumber and cedar, according to contract prices, he is entitled to. If he has anything due on lumber, why don't he get to work and collect it from the people who he claims to owe him? They are all good.
     "At the time of the fire there was not a foot of lumber anywhere around which belonged to any one beside myself and the Michigan Mfg. & Lumber Co. In regards to my oral agreement with Fuhrmann, I was to have the hardwood lumber at a price agreed upon, the inspector was agreed upon to do the inspection, and I was to pay him for his stock as fast as it was delivered at La Rocque, inspected, and in piles. This I did. I expect arrest will follow soon.
                         "Yours truly,
                              "R. MITCHELL."

     The earlier of these communications having been received by the defendant about the time the indorsed draft for $520 reached its hands, it declined to return to plaintiff the money represented by said draft. On May 28, 1912, plaintiff brought suit against the defendant in assumpsit for the proceeds of said draft. The defendant defended the suit upon several grounds. Defendant claimed, *first,* that the policy was void because plaintiff had no insurable interest in the lumber; *second,* that, the description of the property and title thereto being false in fact, the policy was void; *third,* that the plaintiff was responsible for the origin of said fire; and, *fourth,* that the plaintiff's suit could not be maintained because of a provision of the policy, "that no suit or action on this policy for the recovery of any claim shall be sustain-

able in any court of law or equity, unless commenced within twelve months next after the fire." Under these pleadings the parties went to trial, and plaintiff recovered a judgment for the amount of the draft, with interest. Defendant reviews the case in this court by writ of error.

BROOKE, J. *(after stating the facts).* Defendant first claims that the plaintiff should not be permitted to recover because, at the time the policy was written, he had no insurable interest in the lumber, for the reason he had been paid in full and accepted his money.

As nearly as we are able to determine from a careful examination of the record, it seems to have been the claim of Fortier, representing the Michigan Manufacturing & Lumber Company, that the plaintiff had been paid in full according to the scale sheets of McComb, the scaler employed by Fortier. The total amount of hemlock settled for according to said sheets was 36,523 feet. Mitchell claims to have paid according to the scale sheets for 26,551 feet. The plaintiff produced his scale book made at the time the lumber was cut, from which it appears that there was hardwood to the amount of 56,417 feet, and hemlock to the amount of 70,144 feet. The insurance agent before writing the policy in question made a personal examination of the lumber, counted the piles and the tiers in each pile, and estimated the amount at about 100,000 feet. It is apparent that, if the agent Schmidt's estimate was correct, there was at that time in the piles nearly 40,000 feet for which the plaintiff had not been paid. The record discloses that the plaintiff refused to accept the scale given him by Fortier and Mitchell, and had forbidden the removal of the lumber until a new scale could be made. Under these circumstances we are of opinion that the title to the lumber, or at least such portion of it as had

not been scaled or paid for, remained in plaintiff.

Plaintiff's application for insurance was verbal; but Mr. Schmidt, the agent, testifies that he was told by plaintiff that the lumber was contracted to be sold to Mitchell and Fortier. Plaintiff does not claim to have disclosed to the agent the exact amount which had been paid him thereon. This, however, we think is unnecessary; the agent not having requested such information. *Guest* v. *Insurance Co.*, 66 Mich. 98 (33 N. W. 31); *Gristock* v. *Insurance Co.*, 87 Mich. 428 (49 N. W. 634); *Hoose* v. *Insurance Co.*, 84 Mich. 309 (47 N. W. 587, 11 L. R. A. 340); *Brunswick-Balke-Collender Co.* v. *Northern Assurance Co.*, 142 Mich. 29 (105 N. W. 76).

Upon this question, the court charged the jury as follows:

"Now, gentlemen of the jury, that is a question of fact what he informed Mr. Schmidt. That is for you to determine what he really did say to Mr. Schmidt. You have heard Mr. Schmidt's testimony, and you have heard his testimony. But I tell you, gentlemen, that unless at that very time he fairly and fully apprised Mr. Schmidt of what his real interest there was, that he could not recover in this case at all.

"But I also charge you, gentlemen of the jury, that if he at that time fully and fairly stated to Mr. Schmidt the truth—the truth—that he had an interest there in that lumber, that he had not been paid fully for the lumber, that he had an interest there of several hundred dollars, more than he had been paid, that he could recover in this case."

It is next urged that plaintiff cannot recover because the interest, title, and possession of the lumber changed after the policy was written and before the fire. This claim is based upon the fact that plaintiff received two small checks from Mr. Fortier and Mr. Mitchell shortly after the policy was issued. In view of the circumstances under which this policy was issued, and the contracts for the sale of the lumber covered by it which were known to defendant through

its agent, we are of opinion that the receipt of these
sums cannot be held to vitiate the policy.  In other
words, that it did not effect a change in the interest,
title, or possession of the subject of insurance.

Defendant next urges that plaintiff cannot recover
because he misrepresented the material facts and cir-
cumstances concerning the insurance, the subject
thereof, after the fire, and in his proofs of loss.  This
claim is based upon the fact that Fortier's name was
not mentioned as one of the vendees of the lumber in
question.  It is the claim of the plaintiff that he told
the adjuster that Fortier, as well as Mitchell, was in-
terested in the lumber, and it is admitted by the agent
Schmidt that such information was imparted to him
at the time the policy was written.  As Schmidt was
present with the adjuster at the time the loss was
adjusted, it cannot be said that the insurance com-
pany was in any wise injured by the failure to in-
clude Fortier's name as a vendee in the description
of the title.  The paper itself was prepared by the
defendant's agent.  It was read to and signed by the
plaintiff, who swears that he did not notice the omis-
sion of Fortier's name.  *Knop* v. *Insurance Co.*, 101
Mich. 359 (59 N. W. 653) ; *Brunswick-Balke-Collen-
der Co.* v. *Northern Assurance Co., supra.*

Attached to the proofs of loss was a schedule or
statement of loss as follows:

> Put nothing here except what assured actually agrees
> to and signs.  All other statements and reports should
> be separate from proofs.  Original amount lumber per
> estimate made by assured at time of piling:

| | | |
|---|---|---|
| Hardwood, 41,000 ft. cost at $10 | $410 | 00 |
| Hemlock, 50,000 ft. cost at $8 | 400 | 00 |
| | $810 | 00 |
| Deduct for sold and del. 21,000 ft. hardwood | 210 | 00 |
| | $600 | 00 |
| Less purchaser's interest per advance pmt. made. | 80 | 00 |
| | $520 | 00 |

The defendant next urges that, as the plaintiff relies upon the draft, his action is an action upon the case, trover, and not in assumpsit. With reference to this point, it is only necessary to state that the question was raised for the first time in a motion for a new trial. It will not now be considered.

Defendant's final claim of error is based upon three grounds: *First,* admission of the testimony; *second,* improper remarks of counsel; and, *third,* improper remarks of the court, and improperly conducting the trial of the case.

We are of opinion that no reversible error was committed in the admission or exclusion of the testimony. With reference to the two latter grounds, it is enough to say that the case for one involving so small an amount was rather unduly prolonged. The learned trial judge at times displayed some slight impatience; but we are unable to say that he disclosed any bias which tended to defendant's prejudice. His charge was very full and presented the issues to the jury in a manner entirely fair to defendant's claims.

The judgment is affirmed.

MCALVAY, C. J., and KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.