(No. 6081.   June 25, 1935.)

J. C. YOUNG, Respondent, v. THE CALIFORNIA INSUR-
ANCE COMPANY and HARTFORD FIRE INSUR-
ANCE COMPANY and NORTH BRITISH & MER-
CANTILE INSURANCE COMPANY and ROYAL
INSURANCE COMPANY, Appellants.

[46 Pac. (2d) 718.]

Willis C. Moffatt, Carl A. Burke and Laurel E. Elam, for Appellants.

684

Rhodes & Eastabrook and Cleve Groome, for Respondent.

BUDGE, J.—Respondent operated a pool-hall and confectionery store at Wilder. He owned the fixtures used, with the exception of three show-cases, and the merchandise carried in connection with this business. Upon this property he obtained four policies of insurance from four different companies, aggregating $4,000. One Dille, agent for all of the companies except the Royal Insurance Company, residing at Caldwell, a short distance from Wilder, called upon respondent at his place of business on or about September 2, 1932, examined the stock of merchandise, furniture, fixtures and equipment in respondent's place of business and discussed with respondent the matter of taking out additional insurance. Respondent informed Dille that he did not care to renew certain of the policies nor to take out additional insurance. However, through Dille's solicitation respondent was finally persuaded to carry insurance through Dille as agent on the personal property to the extent of $3,500, in addition to the Royal Insurance Company policy for $500 he already had, and paid Dille the premium on that amount of insurance. The policies were delivered and became effective the next day. On September 18, 1932, the property alleged to be covered by the insurance policies was almost totally destroyed by fire.

Appellants were given notice of the fire by respondent and an adjuster was shortly thereafter sent to Wilder to investigate and ascertain the extent of loss. The adjuster furnished respondent with a blank form upon which to enumerate the property destroyed and its value. Respondent advised the adjuster that all of his books, invoices and what-not had been destroyed by the fire and that it would thus be impossible for him to furnish either the original or certified copies of all the invoices and books from which an itemized list of the property could be made, whereupon the adjuster informed respondent that he must have some information of the property destroyed and its value to submit to his companies. Respondent thereafter made up and submitted to the adjuster an itemized list of the property alleged to have been insured and destroyed. This was returned to respondent by the adjuster with a form of affidavit inclosed, and on or about November 9, 1932, respondent executed the affidavit and thereafter submitted it and the itemized statement to the adjuster. This statement was objected to by the adjuster. On or about November 16, 1932, with the help of his attorney, respondent made a second statement, which was likewise objected to by the adjuster, whereupon on December 5, 1932, respondent prepared and swore to a third statement, which was also objected to or not accepted. All three statements were substantially the same in form and all had attached thereto the affidavit of respondent in which he swore as to the character, kind, amount and value of the property alleged to have been destroyed.

In the first statement submitted, preceding an enumeration of the property destroyed, appear figures or amounts set opposite to the word "cost" and there is a conflict in the evidence as to who wrote the word "cost" thereon. On the second and third statements submitted the word "cost" appears at the head of the enumeration of the property destroyed, beneath which is placed a stated amount. The word "claimed" is also placed at the head of enumerated amounts on the second and third statements. In the affidavits attached to the statements general language is

used to the effect that the inventories contain the cash value of each item and the loss thereon, said values being figured 'as of the date of the fire. From what is stated generally in the affidavits, whether the word "cost" on the first statement was written by respondent or the adjuster is of no serious importance, since the measure of damages is not the *cost,*—or what the insured paid for the various articles.

With the three claims of loss to which reference has heretofore been made respondent furnished, as required by the insurance policies, an affidavit sworn to by one W. N. Rhoads, a justice of the peace in and for Wilder Precinct, wherein the said justice certified that he was familiar with the circumstances of the fire at Wilder on September 18, 1932, in which the property of respondent was destroyed; that said business and property was totally destroyed; that he was familiar with the property owned by respondent in the operation of his business and that he honestly believed that respondent had sustained a loss in excess of $6,000 as a result of the fire, which affidavit was admitted in evidence.

Respondent in his three statements or proofs of loss, which were admitted in evidence, claimed that he had been damaged in excess of the total coverage or the face amount of the four policies of insurance. His actions, however, were limited to the amount of the four policies, namely, $4,000.

The four actions instituted to recover against the insurance companies were ultimately consolidated and the consolidated action was submitted to the court and jury resulting in a verdict and judgment for respondent in the sum of $3,000, from which judgment and from an order denying appellants' motion for a new trial this appeal is prosecuted.

Appellant specifies 34 assignments of error, three of which are discussed, and the one principally relied upon involves the action of the court in giving the following instruction to the jury:

"You are instructed that one alleging fraud has the burden of proving it by a preponderance of the evidence and must prove by a preponderance of the evidence that

he has been injured by such alleged fraud, for unless there has been some material injury the alleged fraud is of no consequence. In this case, unless you believe from the evidence that the defendants believed and relied upon the alleged fraudulent representations and acted thereon to their detriment or damage, then as a matter of law the defendants have not been defrauded and the policies of insurance admitted in evidence in this case have not been voided by reason of fraud or false swearing.''

The policies contain the following provision, material here:

''This entire policy shall be void . . . . in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after loss.''

It is appellants' contention, briefly, that because of fraud or false swearing disclosed in respondent's affidavits and proof of loss and other evidence appearing upon the trial, showing overvaluation of the property destroyed, the court committed prejudicial error in giving the instruction heretofore set out, and particularly in instructing the jury that the burden was upon appellants to prove by a preponderance of the evidence that they believed and relied upon the alleged fraudulent representations and acted thereon to their material detriment, damage or injury, and that otherwise appellants had not been defrauded and the policies were not voided by reason of fraud or false swearing. Appellants contend that false swearing or fraud being established, the burden did not rest upon them to prove that they believed, relied or acted thereon to their detriment, damage or resultant injury. Under the facts in this case appellants rejected the statements and the evidence discloses that they were in no way influenced to their detriment or injury by the alleged false and fraudulent proofs of loss and affidavits made by respondent. In other words, appellants rely, to defeat respondent's right to recover, upon proof which they had previously rejected, upon the theory that nothing more need be established than that respondent was guilty of fraud or false swearing, wilfully

and knowingly and with intent to defraud. Conceding that there was a gross overvaluation by respondent in his proofs of loss, to which he made affidavit, it does not necessarily follow that the policies were voided. Coupled with the overvaluation appellants must have established a wilful intent upon the part of respondent to knowingly, wilfully and fraudulently obtain from appellants the payment of a greater sum than the value of the property at the date of the fire.

In *Carroll v. Hartford Fire Ins. Co.,* 28 Ida. 466 (480), 154 Pac. 985, the opinion quotes with approval the following excerpt from *Robbins v. Springfield Fire & Marine Ins. Co.,* 149 N. Y. 477, 44 N. E. 159:

"The rule that an insurance company will not be permitted to defeat a recovery upon a policy issued by it, by proving the existence of facts which would render it void, where it had full knowledge of them when the policy was issued, is too well established by the authorities in this state to require further discussion . . . . Whether the decisions in this class of cases proceeded upon the charitable theory that the insurance company by mistake omitted to make the required indorsement, or intended to waive the provisions regarding it, or upon the idea that its purpose was to defraud the insured, and is for that reason estopped, is of but little consequence, as any one of these theories is sufficient to avoid the defense relied upon in this case."

Dille, the agent of the insurance companies, had full knowledge of the kind, character and value of the property in respondent's place of business at the time the policies were issued, which knowledge was imputed to appellants. Appellants' adjuster visited the place of the fire shortly after it occurred and made a thorough investigation. No other reasonable inference can be drawn than that the adjuster was prompted to reject the proofs of loss,—not because of defects therein,—but because of his own knowledge gained during his examination at the scene of the fire.

It is contended that the court in the instruction complained of advised that before the policy could be voided the insurers must have believed and relied upon the

alleged fraudulent representations and acted thereon to their detriment and damage; that unless the insurers believed, relied and acted thereon, then, as a matter of law, they had not been defrauded. In other words, conceding that the insured made false and fraudulent representations knowingly and with intent to defraud in his claims of loss, the court instructed that if the insurers neither believed, relied nor acted upon such alleged fraudulent representations to their detriment, then as a matter of law they had not been defrauded and the policies would not be voided. If the false and fraudulent swearing in the proofs of loss was calculated to deceive the insurers, it did not accomplish that result; the adjuster, if we are correct in the conclusions that we have reached from the record, at no time believed, relied or acted upon the alleged false and fraudulent statements or proofs of loss furnished by respondent, did not change their position because thereof, nor were they prejudiced thereby. In *Commercial Bank v. Firemen's Ins. Co.,* 87 Wis. 297, 58 N. W. 391, we find the following language used:

" 'Fraud cannot be made available to any party, to set aside or defeat a settlement or account stated, unless it causes some injury to the party complaining of such fraud.' . . . . The law does not undertake to furnish remedies for wrongs which are as impalpable or imaginary as not to cause damage. The law does not regard or treat as a fraud a deception so intangible as not to cause damage. To amount to a legal fraud, it must both deceive and damage."

In *First Nat. Bank v. Glens Falls Ins. Co.,* 27 Fed. (2d) 64, in the course of the opinion the court announces the following rule:

"The proofs of loss are not part of the contract of insurance. The contract requires them to be made, but when made they are the mere declarations of the insured, admissible in evidence as such, but not conclusive of the facts which they state. If they contain false statements, upon which the company relies, and so acts or refrains from acting that injury would result therefrom if the statements were denied, an estoppel *in pais* may arise. . . . . But no

such estoppel arises in ordinary cases of erroneous statements in proofs of loss, where the company is not induced thereby to admit a liability which it would not have admitted or otherwise misled into changing its position. . . . . And, if plaintiff's testimony is accepted, we see no element of estoppel *in pais* arising out of the proofs of loss. For such estoppel to arise, it must appear, not only that false statements were contained in the proofs of loss but also that defendants were misled thereby, and in reliance thereon either took or refrained from taking some action which would result to their prejudice, if plaintiff be allowed to show the true facts. . . . .

"Nor do we see how they can claim to have been prejudiced in any way. They certainly have not paid anything on the policies as the result of the statements contained in the proofs of loss, and we do not see anything that they have done or refrained from doing through reliance thereon which has prejudiced any defense that they may have had. A defense made through hope engendered of defeating recovery under the policies because of statements contained in the proofs of loss is manifestly not such action or change of position as the law contemplates as the basis of an estoppel precluding the insured from contradicting such statements. If it were they could constitute an estoppel in practically every contested case where such question arises."

In *Springfield Fire & Marine Ins. Co. v. Wynn,* 27 Neb. 649, 43 N. W. 401, 5 L. R. A. 841, it appears that the insured in his proof of loss increased the amount of a number of bills of goods purchased by him, for some months before the fire, in the aggregate of about $1,700. This proof was duly sworn to, and as stated, could not be justified, and probably·did subject the affiant to a prosecution for perjury, but the court held that the insured could recover notwithstanding the false and fraudulent statements in the proof of loss where the insurer was not deceived and the insured derived no benefit and could derive none and the insurer received and could receive no detriment. To similar effect see, also, *Western Assur. Co. v. Bronstein,* 77 Colo. 408, 236 Pac. 1013; *Ward v. Queen City Fire Ins. Co.,* 69 Or. 347,

138 Pac. 1067; *Willis Furniture Co. v. Horticultural Fire Relief of Oregon*, 69 Or. 293, 137 Pac. 761, Ann. Cas. 1916A, 449; *Shaw v. Scottish Com. Ins. Co.*, 1 Fed. 761; *Germania Fire Ins. Co. v. Nickell*, 178 Ky. 1, 198 S. W. 534; *Fuhrman v. Sun Ins. Office of London*, 180 Mich. 439, 147 N. W. 618, Ann. Cas. 1916A, 466; *Pearman v. Farmers' Mut. Fire Ins. Co.*, (Mo. App.) 214 S. W. 292. In *Dalton v. Milwaukee Mechanics Ins. Co.*, 126 Iowa, 377, 102 N. W. 120, it is said:

"A false statement in proofs of loss cannot be made available as a defense in any event unless shown to have been made with intent to deceive, and that prejudice resulted. There was no attempt to make proof in such respects in the instant case."

Appellants nowhere, if we correctly read the correspondence, based their nonliability, and so notified respondent, upon false and fraudulent statements made in the proofs of loss, but upon other grounds, and first urged their nonliability, predicated upon fraud and false swearing in the proofs of loss, in their answer in this action. In such circumstances appellants are not permitted to avail themselves of the defense of fraud or false swearing, the rule being that only specified defects can be relied upon as a defense and others, not specified, are waived.

"An insurer, by specifying a certain or particular defect or defects in proofs of loss, waives all other defects therein. And since a requirement that notice of loss be given is for the purpose of enabling the insurer promptly to investigate, such notice is waived where the insurer sends its local agent and adjuster to examine the property, and later objects to the proofs of loss as furnished, but does not mention the fact that the notice was oral, and not written as required by the policy. . . . . The rule that only specified defects can be relied on as a defense, and others not specified are waived, also applies where insurer notifies insured that it refuses settlement for 'noncompliance' with the contract time for filing proofs, and other reasons. . . . . "
(7 Couch, Cyclopedia of Insurance Law, sec. 1593, p. 5593.)

"If an insurer requires or receives proofs of loss, and subsequently requires the claimant to furnish additional proofs, or to amend the proofs already filed, or to perform some similar act, and at the time has knowledge of breaches of any of the conditions of the policy, or of any other cause, such as misrepresentations, etc., which might be a defense to an action on the policy, and remains silent as to such defense, a waiver is effected, and the insurer is estopped from setting up such breach of condition, or other cause, preventing recovery. Thus, the act of a grand recorder of a lodge, after, and with knowledge of, a forfeiture, arising from the insured having engaged in a prohibited occupation, in requesting further special proofs of loss, effects a waiver of the forfeiture. So, if an insurer recognizes the continued existence of a contract by requiring proofs of claim, which are furnished at some trouble and expense, it waives any right to take advantage of any previously known grounds for forfeiture. And a requirement of immediate notice of loss is waived by requesting additional proofs, the furnishing of which involves considerable trouble and expense. In order to constitute a waiver in such cases, however, it must appear that the company had knowledge of such defenses at the time of requiring the additional proof. And the parties may validly contract that a demand for proofs or for additional proofs, shall not effect a waiver, and where it is so provided, calling for additional proofs does not waive a defense of delay or misrepresentations." (7 Couch, Cyclopedia of Insurance Law, sec. 1596, p. 5597.)

██ The terms "fraud" and "false swearing" must have the same application and the false swearing must have been knowingly and wilfully false; its effect being to deceive or mislead. (*Ward v. Queen City Fire Ins. Co.,* *supra; Willis Furniture Co. v. Horticultural Fire Relief of Oregon, supra.*)

We are not unmindful of the fact that there are respectable authorities holding that resultant injury or prejudice need not be proven by the insurer in order to void a policy, it being sufficient if it be established that the insured know-

ingly swore falsely in his proof of loss. In other jurisdictions it is held that it must not only appear that the insured knowingly and wilfully swore falsely, but also with intent to defraud the insurer. We are, however, inclined to follow that line of authorities holding that false swearing, or false swearing with intent to defraud, in the absence of resultant injury is not sufficient to defeat recovery.

The fact that the jury found that the damages sustained were less than the amount claimed in the proofs of loss and less than the amount of the face of the policies would not furnish sufficient evidence of fraud and false swearing, knowingly and intentionally made by the insured, to defeat a right of recovery. (*Wiseman v. American Ins. Co.*, 184 Wis. 523, 199 N. W. 55, 200 N. W. 304.) The liability of the company was fixed by the loss and not by the proofs, which only determined when the policies were payable.

The instructions are sufficient if they substantially lay down the law, and they need not draw fine distinctions as to the amount of evidence required to establish the fraud, or as to what will constitute fraud or attempt to defraud. (*Moyers v. Columbus B. & I. Co.*, 64 Miss. 48, 8 So. 205.)

Other errors assigned, mentioned in appellants' brief, have been examined but we find no basis for a reversal. Appellants were accorded a fair trial on the question of damages sustained by respondent as a result of the fire and substantial justice was done, which being true, we find no substantial reason for holding that the policies were voided for the reasons urged by appellants.

The judgment is therefore affirmed, with costs awarded to respondent.

Morgan and Holden, JJ., concur.

Givens, C. J., and Koelsch, D. J., dissent.

Petition for rehearing denied.