PAULONI, Appellant, vs. SIMMONS MANUFACTURING COMPANY, Respondent.

*February 11—March 2, 1915.*

*Special verdict: Form: Findings, when conclusive: Master and servant: Injury: Negligence: Blowout in molten metal: Knowledge of danger.*

1. In a negligence case where the controverted questions were few and simple, the submission of twenty-one questions in the special verdict is criticised as confusing.

2. Findings of fact by a jury, unless contrary to physical laws, ordinary human experience, or all reasonable inferences, must stand as verities if there is any credible evidence to support them.

3. Findings by the jury in this case to the effect that a blowout or explosion, by which plaintiff was injured while he was pouring molten iron into a chill or mold clamped about a tubing, was caused by defendant's negligence in furnishing rusty, moist tubing, and that plaintiff, an inexperienced molder, neither knew nor was chargeable with knowledge of such danger, are *held* to be sustained by the evidence, although the trial court ruled otherwise and changed such findings.

APPEAL from a judgment of the circuit court for Kenosha county: E. B. BELDEN, Circuit Judge. *Reversed.*

Action for personal injury. On October 13, 1909, while plaintiff was in the employ of defendant as a molder, and while pouring molten iron into a chill or mold clamped about a tubing on a metal bed for the purpose of making an ornamental and useful enlargement thereon, a blowout occurred in the chill, whereby the molten metal was forcibly ejected and thrown into plaintiff's face, destroying his right eye and impairing the vision of the other.

Plaintiff claims the injury was caused by the defendant being negligent in these respects: (1) in furnishing molds and iron tubing affected with moisture or rust; (2) in failing to instruct plaintiff, who was an inexperienced molder, of the danger of pouring molten metal around a moist or rusty tube; and (3) in employing an inexperienced man to place the tubing and molds for the pouring of metal by plaintiff.

The special verdict, showing the jury's answers and changes made by the court, was as follows:

"(1) Was the tubing furnished by the defendant to be set up in the bed part upon which plaintiff was pouring when injured in a rusty condition? *A.* Yes.

"(2) If you answer the first question 'Yes,' then was there any want of ordinary care on the part of the defendant in furnishing rusty tubing for said purpose? *A.* Yes. [Changed by court to 'No.']

"(3) If you answer the second question 'Yes,' then was such want of ordinary care on the part of the defendant a proximate cause of plaintiff's injury? A. Yes. [Changed by court to 'No.']

"(4) Was the tubing furnished by the defendant to be set up in the bed part upon which plaintiff was pouring a chill when injured in a moist condition at the time when plaintiff was required to do said pouring? A. Yes. [Changed by court to 'No.']

"(5) If you answer the fourth question 'Yes,' was there any want of ordinary care on the part of the defendant in furnishing a tubing in a moist condition at the time plaintiff was required to do the pouring in question? A. Yes. [Changed by court to 'No.']

"(6) If you answer the fifth question 'Yes,' then was such want of ordinary care a proximate cause of plaintiff's injury? A. Yes. [Changed by court to 'No.']

"(7) Did the defendant inform the plaintiff before his injury that there was danger of explosion when molten metal was poured around a tubing that was rusty or moist? A. No.

"(8) If you answer question 7 'No,' then was the failure to give the plaintiff such information a proximate cause of plaintiff's injury? A. Yes. [Changed by court to 'No.']

"(9) Did the defendant inform the employee Caponi, before the injury to the plaintiff, that there was danger of explosion if molten iron was poured around tubing that was rusty or moist? A. No. [Changed by court to 'Yes.']

"(10) If you answer the ninth question 'No,' then was the failure to give such information to Caponi a proximate cause of plaintiff's injury? A. Yes. [Changed by court to 'No.']

"(11) Did plaintiff know at and before his injury that there was danger of explosion if molten iron was poured around tubing that was rusty or moist? A. No. [Changed by court to 'Yes.']

"(12) If you answer the eleventh question 'No,' then ought plaintiff, considering his knowledge and experience, in the exercise of ordinary care, to have known at and before his injury that there was danger of explosion if molten iron was poured around tubing that was rusty or moist? A. No. [Changed by court to 'Yes.']

"(13) Did the employee Caponi know at and before the

injury to the plaintiff that there was danger of explosion if molten iron was poured around tubing that was rusty or moist? *A.* Rusty, No. [Changed by court to 'Yes.'] Moist, No. [Changed by court to 'Yes.']

"(14) Ought the employee Caponi, considering his knowledge and experience, in the exercise of ordinary care, to have known at and before the injury to the plaintiff that there was danger of explosion if molten iron was poured around tubing that was rusty or moist? *A.* No. [Changed by court to 'Yes.']

"(15) Did any want of ordinary care on the part of the plaintiff proximately contribute to produce his injury? *A.* No.

"(16) Was the blowing out of the melted iron such as caused plaintiff's injury an ordinary and usual occurrence incident to the business of manufacturing cast-iron beds of which plaintiff knew at and before his injury? *A.* No. [Changed by court to 'Yes.']

"(17) If you answer the sixteenth question 'No,' then was the blowing out of molten iron such as caused plaintiff's injury an ordinary and usual occurrence incident to the business of manufacturing iron beds of which the plaintiff, considering his knowledge and experience, in the exercise of ordinary care, ought to have known at and before his injury? *A.* No. [Changed by court to 'Yes.']

"(18) Did any want of ordinary care on the part of the employee Caponi proximately contribute to produce plaintiff's injury? *A.* Yes.

"(19) Was any want of ordinary care on the part of the employee Caponi the sole proximate cause of plaintiff's injuries? *A.* No. [Changed by court to 'Yes.']

"(20) Was plaintiff's injury the result of an unaccountable accident? *A.* No. [Changed by court to 'Yes.']

"(21) If the court should be of the opinion that plaintiff is entitled to recover in this action, at what sum do you fix his damages? *A.* $3,800."

Upon the verdict as changed the court rendered judgment for defendant and the plaintiff appealed.

For the appellant there was a brief by *Robert V. Baker,*

attorney, and *N. L. Baker & W. J. Zimmers,* of counsel, and oral argument by *Robert Verne Baker.*

For the respondent there was a brief by *Harper & McMynn,* attorneys, and *Cavanagh, Barnes & Cavanagh,* of counsel, and oral argument by *R. N. McMynn* and *James Cavanagh.* They contended, *inter alia,* that the evidence was too conjectural to support a judgment for plaintiff. It was only a guess that the rusty tubing brought by Caponi from the stock room, which was damp, was moist as well as rusty. It was only a suspicion, speculation, or conjecture that any such possible moisture remained within the mold when *Pauloni* was hurt. If plaintiff's case rests in conjecture or in a weight of mere possibilities, then the verdict in his favor cannot be sustained. To warrant a recovery the cause of the injury must be established to a reasonable certainty. *Hyer v. Janesville,* 101 Wis. 371, 77 N. W. 729; *Hamann v. Milwaukee B. Co.* 127 Wis. 550, 106 N. W. 1081; *Schell v. C. & N. W. R. Co.* 134 Wis. 142, 113 N. W. 657; *Hart v. Neillsville,* 141 Wis. 3, 123 N. W. 125; *Stock v. Kern,* 142 Wis. 219, 125 N. W. 447; *Houg v. Girard L. Co.* 144 Wis. 337, 129 N. W. 633; *Samulski v. Menasha P. Co.* 147 Wis. 285, 133 N. W. 142.

VINJE, J. When the evidence was closed only a few material controverted questions of fact remained for determination. These were: (1) Did defendant negligently furnish plaintiff with rusty, moist tubing? (2) If so, was defendant's negligence the proximate cause of plaintiff's injury? (3) Did plaintiff know, or was he chargeable with knowledge of the fact, that a blowout might result from pouring molten metal on moist tubing? (4) Contributory negligence; and (5) Damages. It stood admitted that defendant knew it was dangerous to pour molten metal on moist tubing and that it had not warned plaintiff of such fact. Notwithstanding these simple issues the court submitted a special verdict of twenty-one questions. The confusing nature of such a verdict is best

exemplified by the court's own action upon it. It found by its answer to question 19 that Caponi's want of ordinary care was the sole proximate cause of plaintiff's injuries, and by its answer to question 20 that such injuries were the result of an unaccountable accident. These findings were manifestly contradictory and would not have been made had the usual special verdict applicable to negligence cases been submitted to the jury.

The material questions upon the appeal are: Was there sufficient evidence to sustain the jury's findings (1) that defendant negligently furnished moist, rusty tubing, (2) that such negligence was the proximate cause of plaintiff's injury, and (3) that plaintiff was not chargeable with knowledge of the danger of pouring molten metal on moist tubing? Findings of fact made by a jury, unless contrary to physical laws, ordinary human experience, or all reasonable inferences, must stand as verities if there is any credible evidence to support them. *Beyer v. St. Paul F. & M. Ins. Co.* 112 Wis. 138, 88 N. W. 57; *Harsen v. N. P. R. Co.* 139 Wis. 186, 120 N. W. 826; *Corrigan v. Antigo,* 153 Wis. 451, 141 N. W. 247. Tested by this rule there was credible evidence in support of each finding made by the jury. Practically all the witnesses agreed that a rusty tubing was more apt to gather and retain moisture than one free from rust, and that pouring molten metal on a moist tubing was likely to cause a blowout owing to the moisture being turned into steam by the molten metal. It is doubtful if, as testified to by one witness for plaintiff, dry iron rust alone is likely to cause a blowout. The correctness of such evidence need neither be affirmed nor denied as the case in no wise turns upon it. Caponi testified that he took the tubing in question from the lower layer of a pile lying upon a board which in turn lay upon the ground of the storage room and that it was rusty and moist. The ground or earthen floor was two feet below the level of the outside ground and there was evidence to the effect that the floor in

such storage room was moist and the room damp. It is claimed by defendant that the higher temperature and the drier air in the molding room, together with the clamping on of more or less hot molds, would absorb any moisture there might be on rusty tubing before the molds were poured. That it would tend to do so is evident, but that it effectively did so is not clear. The jury found that rusty, moist pipes caused the blowout, and the finding rests upon evidence and reasonable inferences drawn therefrom.

Plaintiff's evidence was to the effect that he poured the mold in a slow, careful, and usual manner, thus negativing the claim that the blowout was caused by pouring too fast. There was no evidence to the contrary, só the jury must have reached the conclusion that the cause of the blowout was moist tubing. Both jury and court properly exonerate plaintiff from contributory negligence.

Plaintiff, who was twenty-five years old at the time of the trial, had had considerable experience in machine shops, but none with molten metal, before working for the defendant. He had been employed as a molder for about two weeks only before he got hurt, and said he did not understand there was any danger from pouring molten metal around moist or rusty tubing. There is nothing incredible about the statement. Men of maturer years and riper experience may be ignorant of such a fact. The finding of the jury that he neither knew nor was chargeable with knowledge of such danger should not have been set aside.

The judgment is reversed, and the cause remanded with directions to reinstate the answers of the jury and to enter judgment for plaintiff upon the verdict as rendered by the jury.

*By the Court.*—It is so ordered.