McKee, Appellant, vs. Oconto National Bank and another, Respondents.

*April 14—September 12, 1933.*

For the appellant there were briefs by *Eberlein & Larson* of Shawano and *Giles V. Megan* of Oconto, and oral argument by *Mr. M. G. Eberlein* and *Mr. Megan.*

*A. B. Fontaine* of Green Bay, attorney for Peters, receiver, and *Mr. Allan V. Classon* of Oconto and *Mr. Fontaine,* attorneys for the Oconto National Bank, for the respondents.

The following opinion was filed May 9, 1933:

WICKHEM, J. The first question raised upon this appeal is whether the findings of the jury that plaintiff was not dealing with Mehlberg personally or loaning money to him, but was authorizing withdrawals to purchase bonds from the Oconto National Bank, are sustained by the evidence.

Plaintiff was a common laborer, sixty-one years of age, of very limited education. He had done business with the

Oconto National Bank for about thirty years prior to the trial. He had known Mehlberg for about fifteen years, and was on very friendly terms with the latter. He claimed to have had no business experience other than is ordinarily involved in depositing money in the bank and withdrawing small sums as he needed them. Mehlberg was an employee of the bank, and as such cashed checks, waited on the window, accepted savings accounts, made indorsements in savings pass-books, and sold bonds. He became assistant cashier in January, 1927. The transactions out of which this action arises began July 10, 1924, when the first withdrawal from plaintiff's savings account was made. Plaintiff's testimony was to the effect that Mehlberg told him some time before July, 1924, that they had good bonds in the bank and that he ought to purchase some of them, and thus get a higher rate of interest than the savings account carried. Plaintiff claims that Mehlberg assured him that the bank owned the bonds that were to be bought, and that they were for sale; that the bonds would be kept in the bank, and that Mehlberg would clip the coupons and put the money in plaintiff's account. Plaintiff characterized each one of the withdrawals in the same fashion. On the other hand, Mehlberg claimed that these withdrawals were personal loans by McKee to him. He said that McKee brought up the subject of the loan, saying that he should be getting better interest; that Mehlberg told him he would buy some good bonds or anything else; that if the bank had anything for sale that was satisfactory, he could have that. Mehlberg further testified that McKee then said he knew nothing about the subject, and he would have to leave it to him (Mehlberg). Mehlberg responded that if McKee felt that way and wanted to make a personal loan to him, he (Mehlberg) would pay him six per cent. at the beginning of each January and July; that this was the arrangement consented to by McKee. Mehlberg claims to have used the money thus borrowed to speculate

in the stock market, and, after varying success, ultimately lost all of the money.

McKee claims that his testimony is somewhat corroborated by the fact that with the last $4,000 of the first $5,000 withdrawn, Mehlberg did buy bonds from the bank and entered them in the bond register as having been sold by the bank to McKee. These entries are in Mehlberg's handwriting, and are conceded to have been made by him, although Mehlberg asserts that the entries were so made in order to cover up the transaction, and that the bonds were in fact bought and used by him. McKee further claims that he is corroborated by the fact that during the period that followed the withdrawals, Mehlberg entered to McKee's credit in his passbook various sums of interest which McKee understood to be the proceeds of coupons clipped from the bonds. Added to this is the contention that Mehlberg was a man of little property, to whom it would be unlikely that plaintiff would loan money without security, and that the character of his testimony, his willingness to borrow money and to speculate with it when he had no prospects whatever of paying it back in the event that his speculations turned out badly, stamped him as a person of unreliable and untrustworthy character, whom the jury had good ground to disbelieve.

Defendant, while necessarily conceding that there is a conflict between the testimony of Mehlberg and McKee, claims that the testimony of McKee must be regarded as incredible in view of the fact that it is contrary to all the reasonable inferences which certain undisputed facts will bear. The rule in this state that the findings of the jury, unless contrary to physical laws, ordinary human experience, or all reasonable inferences, must stand as verities if there is any credible evidence to support them, is too well established to require extended discussion. *Pauloni v. Simmons Mfg. Co.* 160 Wis. 211, 151 N. W. 265; *Beyer v. St. Paul F. & M. Ins. Co.* 112

Wis. 138, 88 N. W. 57; *Harsen v. Northern Pac. R. Co.* 139 Wis. 186, 120 N. W. 826; *Corrigan v. Antigo,* 153 Wis. 451, 141 N. W. 247; *Busse v. Rogers,* 120 Wis. 443, 98 N. W. 219; *Olson v. State,* 143 Wis. 413, 127 N. W. 975; *Slam v. Lake Superior T. & T. R. Co.* 152 Wis. 426, 140 N. W. 30.

This requires an examination of the facts which are not in dispute, and which are claimed to destroy the credibility of plaintiff's testimony as a matter of law. Plaintiff was never shown and never asked to see the bonds, and neither asked nor received an accounting for some seven years after the first withdrawal. Plaintiff knew that regular and ordinary banking procedure would have called for a special receipt for a safe-keeping transaction, and that he had such a receipt in case of certain Liberty bonds deposited with the bank; that in six years and nine months, although he knew the cashier and other employees of the bank, he never referred to the subject of bonds; that at periods of three months, eleven months, and fifteen months after Mehlberg had left the bank to plaintiff's knowledge, plaintiff accepted interest money on the withdrawals, on the streets of Oconto, from Mehlberg personally, and then deposited the moneys in the bank; that each of these payments was in arrears, and that on the first payment Mehlberg was short $27.50, and informed plaintiff that he would pay up next time; that in March, 1931, plaintiff withdrew about $2,000 from his savings and purchased four bonds from one Heisinger at Oconto, engaged a safety-deposit box at the defendant bank, paid for it, placed his recently purchased bonds in the box, and then went about his business without making a word of inquiry at the bank about his other bonds; that plaintiff's pass-book evidences eighty-six personal visits at the bank during the time here involved, and no inquiry about the bonds, even of. Mehlberg; that from the time Mehlberg left

the bank plaintiff made nine withdrawals and sixteen deposits personally at defendant bank, and made no inquiry for his bonds, his first inquiry being some time after Mehlberg had left town, when plaintiff, in company with his attorney, demanded his bonds. On July 5, 1930, McKee deposited in defendant's bank Mrs. Mehlberg's check for $525 for McKee's semi-annual interest and certain interest which was due to a brother of plaintiff.

While some of the facts heretofore recited as destructive of plaintiff's credibility may conceivably be open to argument, certain others are so inconsistent with his testimony as to render it unworthy of belief. With knowledge of the fact that Mehlberg had left the employ of the bank, McKee accepted interest payments on the street at his hands on at least three occasions. He forgave a shortage until the next interest-paying time. He not only accepted money from Mehlberg, but a check from Mehlberg's wife to cover the interest. To our mind this is so inconsistent with his testimony of a previous transaction with the bank as to render plaintiff's testimony unbelievable. At this stage of the transaction it is beyond belief that if plaintiff had supposed himself to be dealing with the bank, the offered payment on the street by Mehlberg personally, and especially that in which he offered his wife's check, should not have aroused his curiosity and his suspicion, and resulted in inquiries at the bank, none of which were ever made by him although he made frequent deposits and withdrawals for some time thereafter. When there is added to these facts the further fact that during all the period covered by these transactions, and in spite of many personal visits at the bank, there was not a single inquiry about the bonds, we cannot resist the conclusion that McKee dealt with Mehlberg and not the bank; that he trusted Mehlberg personally and looked to him at least until such time as it was evident that Mehlberg could not respond for the amount of the debt.

This conclusion compels an affirmance of the judgment, and renders unnecessary any discussion of the legal questions concerning the authority of Mehlberg and the liability of the bank, assuming that this transaction was had with the bank through Mehlberg.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on September 12, 1933.